## Tudor v. City of Louisville, et al.

(Decided November 28, 1916.)

## Appeal from Jefferson Circuit Court (Common Pleas Division No. 1).

1. Municipal Corporations—Duty to Keep Streets in Order.—It is the duty of municipalities to exercise ordinary care to keep and maintain the streets and sidewalks under their control in a reasonably safe condition for travel thereon, and if they should fail, and if by reason thereof injuries should be sustained, they will be held liable for damages.

2. Municipal Corporations—Duty to Keep Streets in Repair.—The municipality is not the insurer of the safety of its streets or sidewalks, and is therefore not liable for the consequences of an accident to one using them, unless the street or sidewalk was not reasonably safe, and that this condition was the result of a failure of the municipality to exercise ordinary care.

3. Municipal Corporations—Defective Condition of Streets—Liability —Notice.—Such municipalities are not liable for the unsafe condition of its streets or sidewalks because of non-repair, unless the municipality had actual or constructive notice of their condition, and it will have such constructive notice if the condition had existed a sufficient length of time to have enabled the city, by the exercise of reasonable diligence, to discover it.

4. Municipal Corporations—Defective Condition of Streets—Accident. —A dangerous condition will not be presumed from the accident alone, and where there is no other proof of the condition except that the plaintiff slipped and fell, and it is not shown that the walk at the place was constructed of material which would render it necessarily dangerous, or that it had become so from use, the plaintiff has failed to establish his cause of action.

5. Municipal Corporations—Action for Injury on Street.—Where the plaintiff alleges and proves, as in this case, that she slipped upon an iron grating in the sidewalk, but shows that it was perfectly level and constructed out of the ordinary and usual material for such purposes, and there is nothing to show that it either was or had become inherently dangerous, the court properly instructed the jury to find for the defendant.

HENRY J. TILFORD for appellant.

GEORGE CARY TABB and PENDLETON BECKLEY for appellee, City of Louisville.

O'NEAL & O'NEAL for appellee, F. W. Woolworth Company.

Opinion of the Court by Judge Thomas—Affirming.

At about five o'clock on the afternoon of March 17, 1913, the appellant, Willie Ann Tudor, was coming out

of the store of F. W. Woolworth Company, situated on the west side of Fourth street, between Green and Walnut streets, in the city of Louisville, Kentucky, and after getting upon the walk in front of the store she slipped and fell, sustaining injuries, to recover damages for which she filed this suit against the city, the F. W. Woolworth Company, and the McDowell estate. The place where her foot began to slip was upon an iron grating some three or four feet wide, and occupying the space from the wall of the store out to the asphalt portion of the walk. The iron grating has small, circular eyes in it which are filled with glass so as to permit light into the basement of the building, such as are commonly used upon sidewalks for that purpose. It is alleged that the grating was maintained by the owner of the building, the McDowell estate, and for the use of the occupant thereof, F. W. Woolworth Company, and that the city of Louisville allowed and permitted it to be maintained as a portion of the sidewalk, that it had been constructed for many years, and, because of the constant traffic, had become worn and exceedingly smooth, whereby it was rendered slick and dangerous. In an amended petition plaintiff alleged that the city did not construct the grating originally, but that its dereliction consisted in allowing it to be maintained as a part of the walk in the condition described.

A written answer was filed by each of the defendants denying the allegations of the petition and affirmatively pleading contributory negligence. There was also an order controverting the pleadings of plaintiff of record. A trial resulted in a verdict for each defendant, which was rendered upon a peremptory instruction from the court directing it, and, to reverse that judgment, this appeal is prosecuted.

Before considering the merits of the case, it should be stated that no appeal has been prosecuted from the judgment in favor of the McDowell estate, and we fail to find any testimony in the record showing that the F. W. Woolworth Company even occupied the building, much less that the grating was maintained for its benefit as a tenant either of the building or of its basement. As the pleadings put these facts in issue, it was incumbent upon the plaintiff to offer some proof in support of these necessary facts to render that defendant liable. As

this was not done, it is clear that the judgment must be affirmed as to the appellee, F. W. Woolworth Company.

The rule in this state, as established by an unbroken line of cases, is that a municipality must exercise ordinary care to keep and maintain its streets and sidewalks, after they have been taken over by the city, in reasonably safe condition for the character of travel for which they are intended, and if it should fail to do this it will be liable to the one suffering damages thereby. West Kentucky Telephone Co. v. Pharis, 25 Ky. Law Rep. .1838; City of Harrodsburg v. Abraham, 125 S. W. 758; City of Covington v. Belcer, 123 S. W. 249; City of Louisville v. Haugh, 157 Ky. 643; Gnau v. Ackerman, 166 Ky. 258; Eagan v. City of Covington, *Idem,* 825, and cases referred to therein. It is neither a guarantor of the perfect condition of the streets and sidewalks nor of the safety of the traveler on either. Elam v. City of Mt. Sterling, 132 Ky. 657; Varney v. City of Covington, 155 Ky. 662; City of Ashland v. Boggs, 161 Ky. 728.

The negligence for which the municipality may be rendered liable consists of acts of misfeasance and nonfeasance. The former includes faulty construction of the street or sidewalks so as to render them dangerous for travel, while the latter consists of a failure to repair the street or sidewalk after construction, and after becoming unsafe. Of the latter class of negligence, if any, is the one to which the instant case belongs, and the rule in this state is firmly settled that in order to fasten upon the municipality liability for an omission to repair the unsafe condition of the street or sidewalk it must have either actual or constructive notice of the defect, and such constructive notice is established when the evidence shows that the defective condition, although not actually known by the city, could have been known by the exercise of ordinary diligence and care on its part. If the defect or obstruction had existed for such a length of time as to have afforded to the authorities of the city a reasonable opportunity to have discovered it, it would be charged with constructive notice. City of Louisville v. Lenehan, 149 Ky. 537; City of Ashland v. Boggs, 161 Ky. 728; Bosler Hotel Co. v. Speed, 167 Ky. 800.

Applying these legal principles to the facts of this case, we find that there is no testimony in the record as to who constructed the iron grating upon which plaintiff slipped, nor is there any testimony to show how long it

has been constructed. There is some testimony looking
to the establishment of the fact that it is now somewhat
smoother than it once was. There is no evidence to show
that this particular character of grating is in anywise
inherently dangerous, nor is there any evidence to show
any holes by which plaintiff was tripped or in which her
foot became hung or any obstacle over which she stum-
bled. It is true that she testifies that some considerable
time after the accident, and after she had partially recov-
ered from her injuries, she observed that some of the glass
in the iron frame was loose, but to what extent is not
shown, and there is no evidence authorizing the conclusion
that such condition was in any manner dangerous, nor is
it shown that that condition, if it did exist, would cause
the grating to be either smoother or slicker than if it did
not exist. According to the testimony, which includes a
photograph of the walk at that point, the iron grating is
upon a perfect level with the remainder of the walk, and
there is no appreciable aperture between the two. It is
true that a witness testifies that some time previous to
plaintiff's fall the witness had slipped upon the pave-
ment on that same side of the street, but the places where
these two accidents happened are not shown to be identi-
cal, nor does the record show any investigation concern-
ing the facts relative to the accident to the witness; so
that this testimony sheds no light upon the issues in-
volved here, even if it was competent, which clearly it was
not.

Appellant, however, relies upon the case of City of
Carlisle v. Secrest, 25 Ky. Law Rep. 336. In that case it
appeared, by both allegation and proof, that the sidewalk
where plaintiff fell ''was made of rough rock slabs, which
had, by long usage, become very uneven, some of them
slanting down towards the property line, and having
holes several inches in depth between them.'' The walk
was several feet above the adjoining property, and on
one of the slabs which had worn to a slick surface, and
slanting toward the edge of the walk, the plaintiff slipped
and fell off the walk to the ground below, sustaining the
injuries for which he sued. The right of the plaintiff to
recover therein is not predicated upon the isolated fact
that the piece of stone composing a part of the walk had
become slick by constant use, but the other conditions
which we have enumerated were factors in causing the
court to conclude that the walk at that point was not

reasonably safe. There is clearly a wide difference between the facts found in that case and the one we are now considering. The dangerous elements of a slanting, uneven, and rough walk, as well as an unguarded and elevated one, found in that case, are entirely wanting in the instant case. The only parallel facts in the two cases are that the surface of the walk in each one was more or less slick.

In addition to the case relied on, which we have just considered, we are referred to the case of Cremarty v. City of Boston, 127 Mass. 329, and Roe v. Mayor of the City of New York, 4 N. Y. S. 447. But we do not regard the facts in those cases as being analogous to those here involved. In fact, the New York case is one where the original construction was found to be in itself. dangerous, and consequently it can have no bearing upon the case before us.

Cases from this court with somewhat similar features to this one are Carroll's Admr. v. City of Louisville, 117 Ky. 758; City of Louisville v. Uebelher, 142 Ky. 151; Breckman v. City of Covington, 143 Ky. 444, and Mc-Court v. City of Covington, *Idem*, 484. In the Carroll case the plaintiff's decedent was killed by his horse slipping and falling while he was riding over the railroad crossing in the city of Louisville at the intersection of Third and "A" streets. That crossing had been constructed by placing steel rails parallel and about three inches apart and filling in between them with cement and concrete. The rails were not covered with either cement or concrete, and it was charged that the tops of the rails were slick and caused the decedent's horse to slip and fall. In denying the right of plaintiff to recover, and after stating that the city could not construct its streets or sidewalks in accordance with a plan which would be "palpably unsafe to travelers," the court said:

"But when the plan is one that any prudent man might approve, or where it would be so doubtful upon the facts whether the street, as planned or ordered by the city governing board, was dangerous or unsafe or not, that different minds might entertain different opinions with reference thereto, the benefit of the doubt should be given the city, and it should not be held liable."

In the Uebelher case it was claimed that the street was unsafe because constant travel had made a concave depression in one of the blocks of stone out of which the

crossing was constructed, which was claimed by plaintiff to be four or five inches deep, but by defendant to be only from one to one and a half inches deep. In discussing the rights of the parties growing out of the evidence this court said:

"If it was only an inch and a half or two inches, a smooth worn place in the stones, it would not be in such a condition as indicates neglect of the crossing by the city. The city does not insure the safety of its streets, and it is not reasonable to place upon it the burden of maintaining at all times and under any hazard every street crossing and sidewalk in a perfect condition. It is only required to be reasonably safe for use as a footway for pedestrians. There must be some point short of perfection, therefore, that is not actionable negligence. We know as a matter of common knowledge that such depressions in a street as slight unevenness, caused by wear, of an inch or so are quite common in all cities. That which is so customary may be regarded as ordinarily safe, and that is the standard."

In the Breckman case the plaintiff slipped upon a smooth piece of stone one and eight-tenths feet wide, and slanting some three and one-half inches, which caused her to fall, sustaining the injuries for which she sued. This piece of stone or step in its slanting condition was a part of the sidewalk of the city of Covington, but led into a storehouse from which plaintiff was coming at the time she fell. The trial court gave a peremptory instruction to find for the defendant, which was sustained by this court, and, after reviewing a number of authorities, it is said in the opinion:

"Under the testimony of the case at bar, we cannot say that the walk was obviously dangerous. All such sidewalks are more or less dangerous when wet, but that is not a condition which would render a city liable in damages to persons who fall thereon and injure themselves."

In the McCourt case facts are found very similar to the ones we have here; the plaintiff in that case slipped upon a covering of a catch basin made of metal but perfectly smooth and so placed in the walk as to make a perfectly even surface, and it had been so constructed for many years. The complaint was that this material in its smooth and slick condition was dangerous, or at least much more unsafe than if the covering had been made

of wood or if the iron had been corrugated or roughened on its surface. But none of this was permitted to fasten liability upon the city. In the course of the opinion it is said:

"Appellant's complaint really amounts to this, that the city is liable because it did not adopt a covering for the catch basin as safe as could be made, and *keep and maintain* it in this condition. Such is not the law; on the contrary, the city is only required to use reasonable care to construct its public ways so as to make them reasonably safe for travel."

In the light of these authorities, and the rules governing the liability of municipalities in such cases, we fail to discover any error committed by the court in instructing the jury to find for the defendants. As stated, there is no defect in the sidewalk at the point complained of except that it was slick, and was, some months afterward, found to be slightly loose. Nothing is shown as to when these conditions arose, and no fact from which even constructive notice might be imputed to the city, conceding that the testimony shows a dangerous condition. The only evidence of such condition is the fact that the plaintiff slipped and fell. If this, alone, is sufficient to establish a dangerous condition, and one for which the city is liable, then indeed should a note of alarm be sounded lest all municipalities should become bankrupt because of damage suits. We are not prepared to endorse such contention, for, under the rule which we have seen, the city must maintain its walks only in a reasonably safe condition; to require it to maintain them so that no one, under any circumstances, would slip or fall while using them, would impose a burden upon the city well nigh impossible of performance, and consequences clearly intolerable.

We would not be understood as holding that a city would not be liable under any circumstances because of smoothness and slipperiness of a sidewalk, either as originally constructed, or becoming such by use, resulting in its becoming dangerous or unsafe for travelers. If such conditions, accompanied with such danger, are shown to exist, the place could not be said to be reasonably safe, under the law, and if a city has actual knowledge thereof, or constructive knowledge, as herein defined, its liability would be thereby established.

Being convinced of the correctness of the judgment it is affirmed.