# Hendricks v. Covington & Cincinnati Bridge Company.

(Decided April 27, 1928.)

## Appeal from Kenton Circuit Court.

1. Bridges.—Passenger on way, as pedestrian, from street car on toll bridge, and injured in slipping on ice, held toll bridge company's invitee, where bridge company procured toll fees from the street railway company.

2. Bridges.—Where passenger of street railroad on toll bridge was, after alighting from car, using bridge for foot passage, bridge company was required to exercise ordinary care for her safety, she being an invitee.

3. Bridges.—Toll bridge company, knowing or charged with knowledge of the icy condition of its walk and taking no steps to remedy the condition, is liable for injury to invitee.

4. Bridges.—In personal injury action by toll bridge company's invitee against such bridge company, whether bridge company knew, or by the exercise of ordinary diligence could have known, of the icy condition of part of the bridge used by pedestrians, which condition caused plaintiff's fall and injury, and whether company had opportunity to remedy the condition, held for jury.

NORTHCUTT & NORTHCUTT and LULA A. NORTHCUTT for appellant.

GALVIN & TRACY, S. D. ROUSE and O. M. ROGERS for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part.

The appellant brought this suit against the appellees to recover for personal injuries she sustained when she fell while walking on a toll bridge owned and operated by the appellee, Covington & Cincinnati Bridge Company, hereinafter referred to as the bridge company. At the close of her evidence the court peremptorily instructed the jury to find for the appellees and from the judgment entered on that verdict she appeals.

At the time of her accident the appellant was living in Covington, Ky., but was employed by the Crown Overall Company, in Cincinnati, Ohio. She had been working for this concern for about two weeks. The bridge company owns and maintains a toll bridge between Covington and Cincinnati. The bridge is equipped with a walkway for foot passengers and a roadway for vehicles. Street cars cross this bridge, the tracks being laid on

either side of the roadway and parallel and next to the footway. The footway is an ordinary concrete sidewalk. The appellee Cincinnati, Newport & Covington Railway Company, hereinafter called the street car company, operates its street cars between Covington and Cincinnati over this bridge, and, as is conceded, pays bridge tolls to the bridge company for the passengers transported by it in its street cars. The terminal of the street car company in Cincinnati is located in the Dixie Terminal Building, which runs from Third street to Fourth street in that city. These streets parallel the Ohio river. The Cincinnati approach to the bridge begins at Third street, and at Second street is quite a distance above the street level. At this last-named street there is a stairway running from the street level to the footway on the bridge, and the street cars crossing the bridge to Cincinnati stop at this stairway to allow passengers to alight and descend these stairs to the street below.

Appellant was hurt about 7:30 on the morning of October 10, 1925. That night there had been a heavy rain, and towards morning the weather had turned very cold. On the morning in question the appellee boarded a street car of the appellee car company in Covington for the purpose of going to her work in Cincinnati. She alighted from the car onto the bridge at the Second street stop in Cincinnati about 7:30. Fairly read, the evidence shows that the place where the car stopped and appellant alighted was free from the presence of any ice and that she safely alighted from the car. After alighting, appellant undertook to walk across the footway to the steps leading down to the street level. The second step she took brought her upon a sheet of ice, which covered a large area on the footway. She slipped and fell, breaking her hip and suffering many other injuries. A bridge policeman stationed at the Third street end of the bridge promptly came up and assisted her to a taxicab, in which she was taken to a hospital, where she was confined on account of her injuries for a considerable time. Appellant's evidence further showed that almost every time it rained water accumulated in the area covered by the ice on the morning of her accident, and that this condition had existed for such a period of time as that the bridge company knew of it, or could have known of it by the exercise of ordinary care. Her evidence also shows that she did not know of this condition, or of the presence of

the ice, at the time of her accident. Whether the ice on which she slipped and fell was only a thin crust, or was of appreciable thickness, is not disclosed by the evidence. On these facts the trial court peremptorily instructed the jury to find for the appellees.

So far as the street car company is concerned, we find no error in the court's ruling. Appellant based her claim against the street car company on the theory that it was the duty of the car company either to stop its cars at a place reasonably safe for her to alight, or else to warn her of any danger existing at the place where she was discharged, and she cites in support of that contention the cases of Sweet v. Louisville Ry. Co., 113 Ky. 15, 67 S. W. 4, 23 Ky. Law Rep. 2279; Mayhew v. Ohio Valley Elec. R. Co., 200 Ky. 105, 254 S. W. 202, and Kentucky Traction & Terminal Co. v. Soper, 215 Ky. 536, 286 S. W. 776. The trouble about appellant's position is that her theory does not fit the facts of her case. The evidence fails to show that the place where she alighted was not reasonably safe for that purpose. She did not fall as she alighted from the car. The ice did not extend out to the place where she was discharged from the car. She had taken a step or so in an oblique direction from the point of her discharge before she came upon the ice and fell. The street car company violated no duty which appellant insists was upon it in this case.

As to the bridge company, however, a different question is presented. The trial court, in sustaining the bridge company's motion for a peremptory instruction, based its ruling on the decisions of this court with reference to the duties of a municipality in connection with the formation of ice upon its sidewalks. The general rule in such state of case is that a city is not ordinarily liable for mere slipperiness of its sidewalks occasioned by snow and ice. Jaeger et ux. v. City of Newport, 155 Ky. 110, 159 S. W. 671. To determine whether this rule is applicable to the state of facts presented by this case, we must first ascertain the reason which supports it. What is that reason? In White v. City of Hopkinsville, 222 Ky. 664, 1 S. W. (2d) 1068, this court inquired into the basis of the liability of a municipality for negligence in not keeping its streets in repair. We remarked how a city is ordinarily not liable for any negligence in the performance of its governmental functions, and how one would think, at first blush, that the maintenance of public high-

ways in a reasonably safe condition for public travel is a governmental duty, the breach of which should, in theory, afford no cause of action. Yet it is settled that a city is liable for such breach. In commenting on this seeming anomaly, we quoted with approval this excerpt from the opinion in the case of Snider v. City of St. Paul, 51 Minn. 466, 53 N. W. 763, 18 L. R. A. 151:

> "We think the courts would do better (in an effort to define the distinction) to rest (it) either upon certain special considerations of public policy, or upon the doctrine of stare decisis, than to attempt to find some strictly legal principle to justify the distinction."

One of the ancient purposes of organized government is the maintenance of highways. In this state, the construction and maintenance of highways located in cities and towns are ordinarily vested in such municipalities. Where this obligation is vested in the municipality, the duty to keep the highway, at least when once constructed by the city, in a reasonably safe condition for public travel, arises. But the obligation to construct and maintain the street in a reasonably safe condition for travel has never been extended, as the Jaeger opinion points out, to the point where the city must guard against mere slipperiness of its sidewalks occasioned by snow and ice. It is true that in most of the New England states statutes require municipalities to keep their sidewalks free from snow and ice, and for a breach of such duty, causing injury, a recovery has there been allowed. But in the absence of such statutes there is no obligation on the part of the city to keep its sidewalks free from the ice which forms upon it through the ordinary action of the elements. No doubt the reason why the city's duty in regard to the maintenance of its sidewalks has been thus circumscribed is that otherwise the city would have an almost impossible task to perform, and its liability for damages would be too greatly enlarged.

But, be this as it may, it is obvious, from this inquiry into the basis of the nonliability of a city for mere slipperiness of its sidewalks, occasioned by snow and ice on its sidewalks, that such rule can have no proper application to the state of facts here presented. The duty of the toll bridge company to keep the footways on its toll bridges reasonably safe for the travel over them,

which pays tolls for that privilege, arises out of no governmental duty on the part of the bridge company. It is just the ordinary duty which the owner of premises owes to an invitee. The bridge company owned the bridge. The appellant, through the fare she paid the street car company paid toll for her use of the bridge. She was present on the bridge at the express invitation which the owner of the bridge extended to such of the public as wished to use the bridge. Her presence on the bridge was on business of mutual interest—that of the company being the earning of the toll, that of the appellant being the crossing of the river. Such being the case she was an invitee. R. B. Tyler Co. v. Kirby's Adm'r, 219 Ky. 389, 293 S. W. 155; L. E. Meyers Co. v. Logue's Adm'r, 212 Ky. 802, 280 S. W. 107.

As appellant was an invitee, the bridge company owed her the duty of using reasonable or ordinary care to keep its bridge in a reasonably safe and suitable condition, so that appellant would not be unnecessarily or unreasonably exposed to danger. This is the ordinary duty which the owner of premises owes an invitee. Bridgeford v. Stewart Dry Goods Co., 191 Ky. 557, 231 S. W. 22. This being true, if the bridge company knew, or by the exercise of ordinary care could have known, of the presence of this large area of ice upon the footway, where pedestrians were expected to walk and upon which appellant fell, and took no steps to sand it, or otherwise to render it reasonably safe for the traveler, then it failed to discharge that duty which an owner of premises owes an invitee. Thus in Weston v. New York Elevated R. Co., 73 N. Y. 595, which was a suit brought for injuries sustained by falling on a station platform which had been covered with snow and ice, the trial court instructed the jury that:

> "The defendant was bound to be on the alert during cold weather, and to see whether there was ice upon the platform, and to remove or make it safe by sanding it or putting ashes upon it, or in some other manner. . . . The defendant was not bound to keep its platform in such a condition that it would have been impossible for any passenger to slip, but in such a condition that a person using ordinary care, which people use when not apprised of danger, would not slip."

To the same effect are the cases of Maxfield v. Maine C. R. Co., 100 Me. 79, 60 A. 710; Illinois Central R. Co. v. Keegan, 210 Ill. 150, 71 N. E. 321; Lemon v. Grand Rapids & I. R. Co., 136 Mich. 647, 100 N. W. 22; and the same rule was followed by this court in L. & N. R. Co. v. Cockerel, 17 Ky. Law Rep. 1037, 33 S. W. 407.

Appellee bridge company may urge, though, that these railroad cases are not in point, since we said in Frankfort Bridge Co. v. Williams, 9 Dana, 403, 35 Am. Dec. 155, that the responsibility of toll bridge companies should not be made to rest upon the same ground as that of common carriers. That the court in the Williams case was speaking of the responsibility of a carrier when it is an insurer of the safety of the freight it carries, or is under the duty of exercising the highest degree of care to its passengers, is apparent from reading that opinion. In these station platform cases, however, the carrier is no insurer of the safety of the person to whom it is liable for injuries received due to the presence of snow and ice upon the platform. The duty of the carrier is only that of exercising ordinary care to keep the platform reasonably safe for such persons, and this duty rests upon the carrier because of the principle of "owner of premises and invitee." 10 C. J. 916. Hence these carrier cases are quite apposite. Equally so are those cases where a store owner has been held liable to a customer for a fall occasioned by the presence of foreign substances on the floor, which the store owner could have known of by the exercise of ordinary care. Markman v. Bell Stores Co., 285 Pa. 378, 132 A. 178, 43 A. L. R. 862. See, also collection of authorities in 43 A. L. R. 866.

Applying, then, this principle to the facts of this case, as shown by the appellant's evidence, we find that, every time there was a hard rain, water accumulated over the area covered by the ice where the appellant fell. As well said by her, the depth of this water is immaterial, because when it froze its surface was just as dangerous to the traveler, whether the ice itself was but an eighth of an inch in thickness or two feet. The bridge company then knew, or could have known by the exercise of ordinary care, that, when it rained, water stood there. There was a heavy rain during the night preceding appellant's accident. The weather turned very cold during the night. The bridge company is, of course, charged with the knowledge of the ordinary action of the elements. Knowing that the weather had turned to freez-

ing cold, and charged with the knowledge of the condition of this walk where appellant was injured, and knowing that it was a place where travelers would very likely be, the bridge company was under the duty to exercise ordinary care to remove this ice, or to put sand or other substance upon it, so as to make it reasonably safe for those who might walk upon it. The evidence of appellant, with the fair inferences to be given to it, discloses that there was ample time between the formation of this ice and the time when the appellant fell for the bridge company to have done this. It results, therefore, that the court erred in sustaining the motion of the bridge company for a peremptory instruction.

The judgment, therefore, as to the bridge company is reversed, with instructions to grant the appellant a new trial as to it, in accordance with this opinion.