# MARCH, 1938.

THEA BROLIN, APPELLANT, v. THE CITY OF INDEPENDENCE, RESPONDENT.—114 S. W. (2d) 199.

Kansas City Court of Appeals. March 7, 1938.

I. J. Ringolsky, William G. Boatright, Harry L. Jacobs and Ringolsky, Boatright & Jacobs for appellant.

John F. Thice and Charles H. Walters, Jr., for respondent.

BLAND, J.—This is an action for damages for personal injuries. There was a verdict and judgment in favor of plaintiff in the sum of $7000. However, the court sustained defendant's motion for a new trial on the ground that it had committed error in the giving of plaintiff's instruction lettered "A." Plaintiff has appealed.

The facts show that plaintiff was injured between three and four o'clock on the afternoon of March 6, 1935, by falling on a muddy street at the intersection of Park and Maple avenues in Independence. The place where plaintiff fell is on the outskirts of the city, there being only eight or ten houses in the vicinity. Park Avenue runs north and south and Maple Avenue East and West. Maple Avenue is paved, with a curbing on either side. Park Avenue is unpaved north of Maple Avenue but paved south thereof. There is a concrete sidewalk on the south side of Maple Avenue but none on the north side thereof and none on Park Avenue north of Maple Avenue except a dirt, cinder and grass walk along the west side thereof in front of plaintiff's residence. Plaintiff's house is located at the northwest corner of the two streets. She fell about two feet east and one foot south of a manhole which is located approximately at the center of the intersection of the two streets, but probably a foot or two north of the center line of Maple Avenue.

Park Avenue extends for only a block north of Maple Avenue and approaches the intersection on a down grade. By reason of its unimproved state and grade, when it would rain dirt would be washed from Park Avenue into the intersection. Vehicles coming down the hill would likewise deposit mud upon the intersection. This dirt and mud would extend approximately to the center of the street or beyond. One witness testified: "The dirt would extend out

into the intersection and over the manhole. Several times I have seen it clear over the manhole. It was not so thick out in the middle as it was at the end of the payment.'' At times the mud and dirt would be as deep as six inches at the north curb of Maple Avenue but would grow less in depth going south on account of the highest point of the street being at the center thereof so that, at the center, it would be about a half inch to two inches in thickness. There was always mud or dirt upon the intersection and the condition had continued for a period of ten years or longer. At times when it would rain mud would be washed clear across the intersection and there would be a thin coating of mud all over it. The mud was described as ''a kind of clay mud.'' When it wasn't raining the mud would dry up and become dirt and remain on the street. During wet weather it would become slick. The middle of the intersection, being the highest point of the street, ''would be driest, cleanest and freest'' from mud and water ''especially around this manhole.'' The day after plaintiff fell her daughter found about two inches of mud around the manhole. The city would sweep the intersection with a street sweeper about once a month but the dirt was so hard and packed that sweeping was ineffective. In wet weather the sweeper would turn before reaching the intersection.

The concrete sidewalk on the south side of Maple Avenue was out of repair. It could be used during dry weather but certain portions of it, as much as six or seven feet in length, were sunken down and filled with mud and water during wet weather. One witness described this sidewalk as follows:

''As to the sidewalk on the South side of Maple Avenue, it was out of repair. The sections of the walk were cupped, one would be in and one would be out, and pools of water would be there. At every joint of the pavement, the sidewalk was bent over one way or the other, and large pools of water lay in front of one lot on the corner. It was not a pool of water you could step over easily. The water was standing there from one inch to four inches deep.

''I have had occasion to notice how people would walk who wanted to pass that intersection when it was rainy. Some would use the sidewalk, but most of them would walk out in the street. When I walked past this intersection, I would go out in the street when it was muddy or rainy.''

Plaintiff had lived at the northwest corner of the intersection for a period of nineteen years. During dry weather she would use the sidewalk in going to and returning from the east. Plaintiff testified that it was impossible to use the sidewalk during wet weather. Another witness testified: ''Q. State whether or not any portions of the sidewalk were out or broken. A. They were all cracked and water stood in the middle of them.''

Plaintiff testified: "I have noticed other people when they had occassion to walk across this intersection, and when it was muddy and wet they would walk the same as I did when I was hurt, that is, down the center of the street and across the intersection." Plaintiff further testified that she called the Mayor in the late spring of 1934 and informed him of the condition of the street; that nothing was done; that later in the summer of 1934 she called the Chief of Police but nothing was done. There was other testimony relative to notice given the City of the condition of the street.

At the time plaintiff fell she had been east on Maple Avenue visiting a friend and was returning to her home. It had rained the day before. However, when plaintiff left her home it was not raining but when she came back it commenced to rain again. The street was slippery, muddy and very slick. When she fell she got mud and water on her hands.

Relative to the condition of the sidewalk on the south side of Maple Avenue, there was testimony on behalf of the defendant as follows: "The sidewalk on the South side of Maple Avenue is level, and I don't know of any holes in it. I have not seen any pools of water standing on the sidewalk." Other witnesses testified that the sidewalk was in good condition. "There are no holes in the sidewalk."

The instruction given on behalf of plaintiff reads as follows:

"The court instructs the jury that it was the duty of defendant to maintain Maple Avenue in a reasonably safe condition for public use as a street. In determining whether or not the city maintained Maple Avenue in such reasonably safe condition, you will take into consideration all of the facts and circumstances in evidence.

"In this case, you are instructed that if you find and believe from the evidence that on March 6, 1935, there was an accumulation of clay earth on the pavement of Maple Avenue, and if you find that such accumulation, if any, had stood on said pavement of approximately a year prior to March 6, 1935, and on that date several inches or more deep at the northerly line of the pavement of Maple Avenue at Park Avenue and extended southerly to the manhole tapering off thinner in depth as it extended southerly, if it did so extend, and if you further find that such accumulation, if any, when and if saturated with water would become sloppy, muddy and slippery, and if you further find that defendant had been notified on one or more occasions of said accumulation, if any, and had a reasonable time after said notice or notices, if any, to remove said accumulation, if any, prior to March 6, 1935, and failed to do so, if you so find, and if you find that Maple Avenue on March 6, 1935, was not in a reasonably safe condition for public use as a street, and if you find that on March 6, 1935, plaintiff slipped and fell on Maple Avenue and that said slipping and falling, if any, was caused directly by

the aforementioned accumulation of clay earth, if any, and rain thereon, if any, and the formation thereby of mud, if any, then your verdict must be for the plaintiff, if you further find that plaintiff was at said time and place exercising ordinary care and precaution for her own safety."

Defendant calls our attention to the fact that the first sentence of the instruction fails to properly declare the law, for the reason that it places a duty upon it to maintain Maple Avenue in a reasonably safe condition for public use, whereas, it was required only to use reasonable care toward that end. [See Albritton v. Kansas City, 192 Mo. App. 574; Francis v. West Plains, 203 Mo. App. 249.] Of course, the first sentence of the instruction constitutes a statement of a mere abstract proposition of law and it is well settled that even though the duty of a city is stated too broadly in that connection, if sufficient facts are subsequently submitted in the instruction, to entitle plaintiff to recover, the error is cured. [Drake v. Kansas City Public Service Co., 333 Mo. 520; Hoelzel v. C. R. I. & P. Ry. Co., 337 Mo. 61, 72; Bales v. Kansas City Public Service Co., 328 Mo. 171; Hutson v. Missouri Stair Co., 296 S. W. 216, 218.]

Plaintiff insists there are sufficient facts submitted in the instruction to entitle her to recover. Defendant contends to the contrary. This requires a discussion of the law applicable to the particular situation presented in this case.

It will be remembered that plaintiff did not fall upon a sidewalk or a cross-walk, but upon a public street. A city is liable for permitting an accumulation of dirt on a sidewalk which, when, saturated with water from rainfall, will be converted into slippery mud, causing a pedestrian, in the exercise of ordinary care, to be injured by slipping and falling thereon. [Milledge v. Kansas City, 100 Mo. App. 490; Strange v. St. Joseph, 112 Mo. App. 629; Manning v. Kansas City, 222 S. W. 927.] In the Milledge case supra, l. c. 496, it is stated: "If the earth saturated with water and thereby converted into mud had been carried upon the sidewalk by the rain just fallen, then the contention (of the defendant) would have some force; but as the city had maintained the walk continuously covered with earth liable to be converted into slippery mud by rains that might occur at any time, it seems that in so doing it was guilty of negligence. It would have been the duty of a prudent person under the circumstances in the exercise of ordinary care to have anticipated the danger and removed the cause. And there can be no difference upon principle in a question of diligence in requiring a city to remove from its sidewalks snow and ice, than a similar duty with reference to mud which may accumulate upon such walks to such an extent as to render them unsafe and dangerous to passengers."

But, as before stated, we are here dealing with a street and not a

sidewalk. "All portions of a public street, from side to side and end to end, are for the public use in the appropriate and proper method, but no greater duty is cast upon the city than that it shall maintain the respective portions of streets in reasonably safe condition for the purpose for which such portions of the street are respectively, devoted." [Kohlhof v. City of Chicago, 192 Ill. 249, 251.] "The rule in all cases, we think, is that a city is only required to maintain the respective portions of its streets in reasonably safe condition for the purposes to which they are respectively devoted by the intention and sanction of the city." [Maxey v. City of East St. Louis, 158 Ill. App. 627, 630.] [See, also, Woodson v. Met. St. Rys. Co., 224 Mo. 685, 699, 700; Holding v. City of St. Joseph, 92 Mo. App. 143.] " 'A sufficient street, is at best a relative term. The same care is not required of a city in reference to its carriage way as to its sidewalks. The city is required to keep its streets in a reasonable state of repair, but it meets the duty imposed upon it by the statute, when it maintains the respective portions of the street in a reasonably safe condition in the light of the purpose for which such portions intended." [City of Superior v. Olt, 239 Fed. 100, 102.]

Of course, the entire street is for public travel and a pedestrian has a right to use the vehicular part as well as the sidewalk. [Adelman v. Altman, 209 Mo. App. 583, 590; Strother v. Kansas City, 316 Mo. 1067, 1074; Dignum v. Weaver, 204 S. W. 566; Carradine v. Ford, 195 Mo. App. 684.] But the street proper is primarily for vehicles and what would constitute ordinary care on the part of the city in relation to its maintenance would not be the same when applied to a sidewalk. That is the jist of the holding in the cases just cited and that is the reason underlying the distinction made between the duty of the city as to mud accumulating on a sidewalk and a like substance remaining on the vehicular portion of the street. In this connection the rule is that a city is not required to keep the vehicular portion of the street free from mud, especially where the surrounding conditions are such as existed in this case. [O'Reilly v. City of Syracuse, 63 N. Y. S. 520; Manning v. Kansas City, supra, 1. c. 928.]

If this were an ordinary case, plaintiff could not recover at all and the court might well have given defendant's instruction in the nature of a demurrer to the evidence. But we do not think this is an ordinary case. Here, defendant permitted the only sidewalk present which could have been used by plaintiff, to become in disrepair so that it was not reasonably safe to pass over it in wet weather and at the time plaintiff fell on the street. There was evidence that pedestrians had for a long time used the street in wet weather in preference to the sidewalk. The city had ample time to have knwon of

all of these circumstances. [See Strother v. K. C., *supra;* Adelman v. Altman, *supra;* City of Superior v. Olt, *supra.*]

If, by reason of defendant's negligence in failing to maintain the sidewalk so it could have been used by pedestrians with reasonable care, under the circumstances, plaintiff had been forced to go over a route which the city was under no duty to keep in repair for pedestrians and was thereby injured by reason of the dangerous condition thereof, defendant, no doubt, would have been liable for its failure to maintain the sidewalk in a reasonable state of repair. [See Edmonston v. Kansas City, 57 S. W. (2d) 690.]

However, we are of the opinion that the instruction is erroneous for the reason that the evidence is disputed as to the condition of the disrepair of the sidewalk; defendant's evidence showing that it was in good repair. The instruction wholly ignores this issue. The facts submitted in it do not constitute negligence *per se,* under all of the circumstances. [Jackson v. Kansas City, 106 Mo. App. 52, 56, 57.]

We find nothing in defendant's instructions to cure the error in plaintiff's instruction. [State ex rel. v. Ellison, 272 Mo. 571.]

The judgment is affirmed. All concur.