## City of Covington v. Keal.

Oct. 31, 1939.

238

239

Ralph P. Rich and Eugene C. Benzinger for appellant.

Sawyer A. Smith for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appeal is from a judgment in favor of Miss Birdie Keal for $10,000 for personal injuries sustained by slipping and falling on a sidewalk. The accident occurred shortly after seven o'clock in the evening of April 5, 1937, at or near the corner of Thirty-Ninth and Locke Streets in Covington. At that place the sidewalk is three feet below the surface of the adjacent lot owned by the City Board of Education. There was once a retaining wall of concrete blocks, but at the time of the accident much of the wall had fallen down or been removed. The condition had existed for several years, during which dirt from the embankment had been washing over the concrete pavement. The plaintiff showed that this washing of the soil during the previous winter, or a much longer period, had accumulated a coating of clay on the sidewalk across to the curbing, tapering from about three inches thick to a scum. It extended twenty-five feet or more in length and was particularly bad at the corner. When this clay was wet it was very slick. It had rained the night before and had been drizzling and raining off and on all day.

The plaintiff was on her way home from work. It

was dark and a heavy rain threatened so that she had taken this route instead of another customarily traveled. When the plaintiff reached the corner she slipped on the mud on the sidewalk and suffered a hard fall. All the proof is that the place was very slippery and treacherous.

The defense is that the City is not liable for the presence of a skim of mud, washed down from an embankment across a sidewalk by sudden or recent rainfalls. The City introduced Reports of the Weather Bureau showing that in Cincinnati between two and eight o'clock p. m., there was .44 of an inch of rain that day and between six and nine o'clock .32 of an inch. This is a hard rain. The plaintiff proved that the hard rain began shortly after she had fallen. Besides the evidence of a continuous drizzle throughout the day, it will be observed that the defendant did not confine its evidence as to the rainfall before seven o'clock, or the time of the accident. It may have rained hard between that hour and eight or nine o'clock, to which hours the reports extended. The question of the City's negligence must, therefore, be considered in relation to the fact established by the plaintiff that there had been an accumulation of clay for such period of time that the jury could say the City had constructive knowledge of its presence, as well as of its slipperiness, for, of course, knowledge of the municipal authorities that it had been raining during the day cannot be denied.

There can be no dissension as to the general proposition of law that it is the duty of a city to exercise reasonable care to keep its sidewalks in a reasonably safe condition for the use intended by those who exercise ordinary care for their safety. The difficulty always is in the application. In a court of review the question is whether in the particular case the situation disclosed requires the court to say that the duty was or was not violated as a matter of law because reasonable men could not reach different conclusions (Citizens' State Bank v. Johnson County, 182 Ky. 531, 207 S. W. 8), or to say that the matter of negligence was for the jury to determine. The issue of negligence was submitted to the jury in this case by an instruction about which no complaint is made. It submitted also the question whether the condition had existed for such length of time that the City, in the exercise of ordinary care, could have known about it. Our problem on this

phase of the case is to determine whether it should have been ruled by the trial court that the defendant was entitled to a directed verdict upon the facts adduced by the plaintiff.

It is to be borne in mind that the suit is not predicated upon mere slipperiness due to rain falling upon an otherwise safe pavement. Liability is predicated upon negligence in permitting the accretions of clay which naturally became slippery when converted into mud by rainfall.

In City of Lebanon v. Graves, 178 Ky. 749, 199 S. W. 1064, L. R. A. 1918B, 1016, we held it to be a question for the jury whether the city was negligent in constructing a section of a sidewalk of smooth concrete at a considerable slope, on which a woman slipped and hurt herself. As therein pointed out it makes little difference so far as liability is concerned whether the unsafe and dangerous condition was due to a defective plan or faulty construction, or to having allowed the condition to arise after construction, since the city's duty is to maintain its pavements in a reasonably safe condition both as to freedom from defect and freedom from obstruction.

In Tudor v. City of Louisville, 172 Ky. 429, 189 S. W. 456, 457, 460, a peremptory instruction for the city was held proper in an action for personal injuries sustained by plaintiff slipping on an iron grating with glass sections in it. But it is repeated in the opinion that there was no evdence as to who had constructed the grating nor how long it had been in the pavement nor of any fact from which constructive notice might have been imputed to the city. The conclusion of the opinion is:

"We would not be understood as holding that a city would not be liable under any circumstances because of smoothness and slipperiness of a sidewalk, either as originally constructed, or becoming such by use, resulting in its becoming dangerous or unsafe for travelers. If such conditions, accompanied with such danger, are shown to exist, the place could not be said to be reasonably safe, under the law, and if a city has actual knowledge thereof, or constructive knowledge, as herein defined, its liability would be thereby established."

We look to our rulings in relation to snow and ice on sidewalks causing pedestrians to slip and fall. The principle is the same. In accordance with the weight of authority (13 R. C. L. 414; 43 C. J. 1022, 1023), we hold that a city is not ordinarily liable for mere slipperiness caused by snow and ice, but may be liable for resulting injury where the sidewalk was defective, or the snow or ice amounted to an obstruction, or its natural lay or condition was changed by artificial means, such as by permitting its accumulation in ridges or inequalities liable to ·trip pedestrians—the element of knowledge being shown. Jaegar v. City of Newport, 155 Ky. 110, 159 S. W. 671; Varney v. City of Covington, 155 Ky. 662, 160 S. W. 173; Gower v. City of Madisonville, 182 Ky. 89, 206 S. W. 27; Cf. Hendricks v. City of Covington & Cincinnati Bridge Company, 224 Ky. 592, 6 S. W. (2d) 1050.

Thus in town of Belleview v. England, Ky., 118 S. W. 994, a pedestrian, forced to walk in the street because of the dangerous condition of a board sidewalk, recovered damages where the street was rendered unsafe on account of gullies having been allowed to form and a water main left leaking for some months with the escaping water running down into the gullies forming the ice upon which the plaintiff slipped. And in City of Henderson v. Dennis, 157 Ky. 192, 162 S. W. 820, we affirmed a judgment against the city recovered by a pedestrian injured by slipping on ice formed of water which an adjoining business establishment, with the knowledge of the city, had been discharging on the sidewalk. The distinction between those two cases and the Jaegar and Varney cases is that in each of the latter the dangerous condition was due wholly to natural cause, while in each of the former two cases the hazard was the result of negligence in permitting a condition to arise which was made dangerous by a reasonably anticipated natural cause.

Of closer application to the facts of this case is City of Louisville v. Carr, 204 Ky. 119, 263 S. W. 674. A woman was injured when she slipped on some green slime or mossy substance which had formed on the sidewalk by water from a leaking box in an adjacent yard running over it, the slimy condition having existed for such length of time that the city should have known of it and removed or remedied the same. A judgment against the city was affirmed.

The case of City of Dayton v. Fox, 254 Ky. 51, 70 S. W. (2d) 961, in which we held a verdict for the plaintiff was flagrantly against the evidence, is distinguishable. There an elderly lady, walking in a hard rain, slipped on the wet paving or perhaps on a small bit of mud. Though there were some holes in the pavement near the place she fell, it was definitely established that she had fallen where there were no holes. The principle of the Tudor, Jaeger and Varney cases, supra, controlled that decision, for it was not satisfactorily shown that the proximate cause of the plaintiff's injuries was any faulty condition of the walk, concurring with the rain.

The cases of Yeager v. City of Bluefield, 40 W. Va. 484, 21 S. E. 752, and O'Reilly v. City of Syracuse, 49 App. Div. 538, 63 N. Y. S. 520, relied upon by the appellant, are not in point, for in each of them the pedestrian slipped on mud in the street while crossing it—the first wholly unimproved and the second near a recently filled trench which had not been resurfaced.

In short, the negligence in the case at bar was a pre-existing condition, constructively known to the city, which became dangerous when affected by the natural elements, with the presence of which and its action or aggravation the city officers were chargeable as a matter of common sense and common knowledge. The situation was an obstruction for which the city was responsible, innoxious when dry but rendered inherently dangerous by the concurring action of nature. Particularizing, we may adopt the following succinct statement of liability, based upon several cited Missouri authorities, in Brolin v. City of Independence, 232 Mo. App. 1056, 114 S. W. (2d) 199, 202:

"A city is liable for permitting an accumulation of dirt on a sidewalk which, when saturated with water from rainfall, will be converted into slippery mud, causing a pedestrian, in the exercise of ordinary care, to be injured by slipping and falling thereon."

This conclusion is supported by City of Linton v. Maddox, 75 Ind. App. 449, 130 N. E. 810. The statement of law, of course, is subject, as always, to its applicability to a particular state of facts and to submission of the question of liability and to submission of the question of liability to the jury. It was applicable here and

the jury decided that the city was negligent. We are of opinion, therefore, that the court correctly overruled the defendant's motion for a peremptory instruction.

Miss Keal broke her hip in the fall. At the age of forty, she has been rendered a hopeless cripple, has suffered intense pain, and will continue so to suffer. She had been steadily employed, earning $23 a week, as a saleslady in a Cincinnati store, but is now unable to earn her living. The argument that the verdict is excessive is not rested upon a contention that appellee's present condition and her experiences did not justify the verdict. It is that the appellee's condition is due to her own negligence in failing to have proper medical and surgical treatment.

When the plaintiff was injured she was promptly attended by Dr. Palmer Carlton. He testified that he thought she had sprained the muscles or ligaments in her leg and made no other diagnosis. He saw her ten or twelve times professionally, but never had an X-ray picture made. About six weeks ensued. Then other doctors were called and they had X-rays made and discovered that the patient had a badly fractured hip bone and that healing had taken place with the bone out of position. It was then too late to put her in a cast, but suitable treatment was rendered. Miss Keal did not get out of bed until fall. Her hip bone does not fit into the socket and her leg is from one to one-and-a-half inches shorter than the other and it pains her to put it to the floor.

The law in relation to subsequent aggravation or neglect of injuries is thus stated in 15 Am. Jur. "Damages," Section 83:

"One who has received a personal injury as a result of the negligence of another can recover all damages proximately traceable to the primary negligence, including subsequent aggravations the probability of which the law regards as a sequence and natural result likely to flow from the original injury. Generally speaking, if the injured person conducts himself as would a reasonably prudent person in his situation and circumstances, but by his subsequent conduct innocently aggravates the harmful effect of the original injury, whatever damage may be attributed to such aggravation of the injury is considered the proximate result of the original in-

jury and recoverable as a part of the damages therefor. The original wrongful act is deemed the proximate cause of the entire injury, provided the act of the injured person which aggravates the injury is within the course of conduct of a reasonably prudent person under all circumstances."

The duty of an injured person in relation to surgical care is stated in Section 84 of that text to be, "to use ordinary and reasonable diligence to secure such treatment by competent physicians and surgeons," and to follow their advice. And the consequent results if the injured person does so is thus stated in Section 85:

"It is well settled that if an injured person exercises reasonable care to minimize his damages by selecting a physician or surgeon to treat his injuries, he may recover damages to the full extent of his injuries even though the physician employed omits to use the most approved remedy, or the best means of cure, or fails to exercise as high a degree of care or skill as another physician might have exercised. Most courts go further and hold that if the injured person uses ordinary care in endeavoring to be healed and in the selection and employment of medical and surgical help, but his injury is aggravated by the negligence or unskilfulness of the physician or surgeon employed, the person causing the original injury will be responsible for the resulting damage to its full extent. Any aggravation or increase of the injuries resulting from mistakes of the physician or his want of skill or a failure of the means employed to effect a cure are regarded as a part of the immediate and direct damages which naturally flow from the original injury. In other words, if the treatment results in increased or additional damages, the wrongdoer is liable therefor; while if it reduces the resulting damages, the reduction relieves the wrongdoer pro tanto. In such cases, it is held that the unskilful treatment is a result which reasonably ought to have been anticipated by the original wrongdoer, and the law regards his negligence in causing the original injury as the proximate cause of the damages flowing from the subsequent negligent or unskilful treatment thereof. There are, however, some decisions which take the view that a defendant is not liable for increased

damages caused by the negligence or unskilfulness of the physician.''

See also 8 R. C. L. 447, et seq.; Annotations, 39 A. L. R. 1268; 82 A. L. R. 491.

In Stewart Dry Goods Company v. Boone, 180 Ky. 199, 202 S. W. 489, it was claimed in argument that a verdict was excessive because the ultimate condition of the plaintiff was the result of a failure to undergo a major operation which would have minimized his damages. Citing 8 R. C. L. 447, and applying the principle of law therein and above stated, we held that such obligation did not rest upon the plaintiff, for his entire duty was to exercise ordinary diligence and prudence in selecting competent doctors and following their advice, which he had done, and there was no evidence that the doctors who had treated him were otherwise than skillful. It was held that the injury suffered in the accident had not been augmented by the plaintiff's neglect. The same rule was applied in Louisville & Nashville Railroad Company v. Baker, 158 Ky. 224, 164 S. D. 799; H. T. Whitson Lumber Company v. Upchurch, 198 Ky. 127, 248 S. W. 243; Billroy's Comedians v. Sweeny, 238 Ky. 277, 37 S. W. (2d) 43.

The court gave the following instruction requested by the defendant:

''The court instructs the jury that it was the duty of the plaintiff to exercise ordinary care in the treatment of or in having treated her injury, if any, as described in the evidence, as would any person of ordinary prudence similarly situated and under like circumstances; and in case she failed to exercise such care, then the defendant is not responsible for any aggravation of her injury, if any, that she thereafter suffered in consequence of said want of ordinary care in this respect.''

It is a correct statement of law though it did not present the alleged negligence in selecting a competent doctor. It may be doubted whether the evidence authorized the instruction. City of Richmond v. Hill, 195 Ky. 566, 242 S. W. 867; Cf. Worsham Brothers v. Worley, 220 Ky. 682, 295 S. W. 981. The defendant did not attempt in any way to prove that the plaintiff had failed to exercise ordinary care in having her injury treated, or, if the jury should assume she did, to prove to what

extent her failure augmented her injury. It did not attempt to prove that Dr. Carlton was not a competent physician or that he was negligent, or that the plaintiff herself had failed to exercise due diligence and prudence in choosing him as her doctor or in following his professional advice. Notwithstanding the absence of evidence, it is contended the jury ignored the instruction. And we are called upon by counsel for appellant to set ourselves up as surgical experts and, in effect, supply missing evidence by declaring that the failure of the doctor to have an X-ray picture made promptly was evidence of professional incompetency, known or appreciated by the plaintiff when she chose him, and that the plaintiff was negligent in the way she cared for her injury, so as to relieve the city pro tanto from liability for the ultimate result of its negligence. Under the record the verdict cannot be held excessive.

The judgment is affirmed.