**BROWN HOTEL COMPANY, Appellant,**

v.

**Walter MARX, Appellee.**

Court of Appeals of Kentucky.

Feb. 24, 1967.

Charles F. Wood, Greenebaum, Barnett, Wood & Doll, Louisville, for appellant.

Erwin A. Sherman, Herman Frick, Louisville, for appellee Walter Marx.

John T. Ballantine, Ogden, Robertson & Marshall, Louisville, for Earl M. Roles.

DAVIS, Commissioner.

■ Walter Marx obtained verdict and judgment of $8,213.35 as compensation for personal injury he sustained when his wrist was cut while he was a guest at The Kentucky Hotel (hereinafter hotel) in Louisville; the owner of the hotel appeals, asserting that it was entitled to a directed verdict. In testing that question we must ascribe to the evidence all reasonable inferences and deductions supporting appellee's claim. Johnson v. Vaughn, Ky., 370 S.W.2d 591.

Marx, a salesman, rented a room in the hotel on April 8, 1963. The room was a large sample room in which Marx displayed merchandise to prospective buyers. It had accommodations for sleeping and was equipped with two bathrooms. Marx sustained the injury complained of in one of the bathrooms when he turned off a faucet in the bathtub. The faucet-handle was a porcelain appliance, x-shaped, and had been in service in the hotel since about 1927. According to Marx' evidence, the faucet-handle crushed in his hand and he sustained a cut on the thenar eminence of his left hand.

The wound bled profusely. Marx released from his grasp the fragments of the faucet-handle as he observed the flow of blood; these fragments fell into the partially filled tub, and Marx saw them no more.

Arrangements were made promptly by the hotel's management-employees for Marx to receive medical attention from Dr. Earl M. Roles; Dr. Roles was the "house" physician, although his office was not in the hotel building. The wound was treated and sutured by Dr. Roles shortly after the accident. Since Marx resided in Atlanta, Georgia, and would not be available for follow-up treatment by Dr. Roles the latter advised Marx to consult a physi-

cian of his own choice for removal of the sutures.

The following excerpt from the report of Dr. Roles will assist in understanding the nature and extent of the wound and treatment:

> "Examination of the left hand, palmar aspect, revealed a laceration three-fourths of an inch in length over the thenar eminence.

> "The wound was cleaned and Metaphin was applied. Under Xylocaine anesthesia four sutures were placed in the wound. Furacin dressing was then applied and he was given Emperin Compound for his pain."

Marx suffered extensive pain in the member as he undertook to reach Atlanta; he was compelled to engage a man to complete the driving from Louisville to Atlanta. He gave testimony reflecting that his pain-experience continued and caused him substantial loss of time and extra expenses incident to his work. He did consult a doctor in Atlanta, on several occasions, but his pain and disability persisted. On November 19, 1963, Marx was examined by Dr. Harold E. Kleinert, a specialist in hand surgery, and was advised by Dr. Kleinert that his continuing trouble was being caused by some retained foreign body or "perhaps scar tissue." He recommended remedial surgery. The surgery was performed in Atlanta in December; Marx responded rapidly and was substantially free of disability and pain in two or three months after the operation.

■ Marx sued the hotel and Dr. Roles. The action against Dr. Roles, premised upon alleged malpractice, was dismissed peremptorily by the trial court and Marx has not filed any direct appeal from that adverse ruling. His attempt to have appellate review of that phase of the case by cross-appeal has been denied since Dr. Roles was not a party to the appeal against Marx. CR 74.

The appellant contends that the evidence required a directed verdict for it because there was no showing of any alleged defect on the part of the hotel. Additionally, it is argued that there was no showing that the hotel could have obtained notice of the defect by the exercise of ordinary care, and that the premises were under the exclusive control of Marx for approximately 20 hours prior to the injury.

In support of its position the appellant relies upon Trembley v. Capital Co., Calif., (1949), 89 Cal.App.2d 606, 201 P.2d 398, and Hunter v. Hotel Sylvania Co., (1943), 153 Pa.Super. 591, 34 A.2d 816. In each of the cited cases intermediate courts of the respective jurisdictions refused to apply the doctrine of res ipsa loquitur in situations involving crumbling porcelain faucet-handles. For our purposes we may concede that the cited authorities support appellant's' view, even though superficial distinctions could be suggested. We are of the view, however, that the reasoning adopted in those cases is out of harmony with the decisions of this and other courts, and we respectfully differ from the views enunciated by these sister jurisdictions.

■ The appellant concedes that the hotel had the duty to exercise that degree of care generally used by ordinarily careful, prudent hotel operators in circumstances similar to those proven in the case, to provide reasonably safe accommodations to Marx, its guest. But, appellant maintains, the hotel was not an insurer of the safety of Marx, and it cannot be held liable unless the proof shows that there was a dangerous condition of which the hotel knew, or by the exercise of ordinary care could have known. In short, the appellant contends that the proof must demonstrate that there was a dangerous condition and that the hotel had "notice," actual or constructive, of it. As an adjunct to this reasoning the appellant maintains that there was nothing to show that additional in-spections by its employees would have brought the defect to the hotel's attention.

A closely related argument has been recently considered and decided adversely to appellant's contention. See The Chesapeake and Ohio Railway Company v. Biliter, Adm'r, Ky. (decided February 3, 1967). In Biliter we observed, in part:

"Considering that railroad trains ordinarily do not fall into rivers in the absence of negligence, we think this was an appropriate case for the application of res ipsa loquitur." Citing. Id.

■ It is our judgment that the res ipsa loquitur doctrine properly applies to the present case. Without explication of our reasons, we call attention to Bell & Koch, Inc., v. Stanley, Ky., 375 S.W.2d 696, and the authorities there discussed, as expressive of our views here as related to res ipsa loquitur.

It is not entirely without significance that an employee of the hotel gathered up the fragments of the shattered faucet just after the accident, and that the hotel never did produce these fragments for examination by Marx' attorneys. The hotel explained that these pieces had mysteriously disappeared from its custody, despite instructions that they were to be preserved.

■ As respects the inspections made by the hotel, the appellant contented itself by showing that maids regularly cleaned the bathrooms, and reported any defects they observed. We are not impelled to the conclusion that such inspections were so searching and effective as to afford appellant, as a matter of law, a complete defense to the present claim. Obviously the maids possessed no qualifications enabling them to inspect plumbing fixtures. Nothing in the record suggests that normally prudent operators of hotels use or regard this type of inspection as the degree of care required of them. We conclude that

neither the court nor jury was required, as a matter of law, to accept this scant inspection as that degree of care usually exercised by ordinarily prudent hotel operators in circumstances similar to those at bar.

■ It follows, we think, that the appellant may not be heard to say that inspection would not have revealed the dangerous condition. The same argument was advanced in Chesapeake and Ohio Railway Co. v. Biliter, Adm'r, Ky., (decided February 3, 1967). As observed in Biliter, the argument is truly one addressed toward proximate cause. The application of the res ipsa loquitur doctrine is predicated upon the inference that the accident was caused by negligence. Here, as in Biliter and as in Propper v. Chicago, Rock Island & P. R. Co., 237 Minn. 386, 54 N.W.2d 840, 35 A.L.R.2d 459 there is an inference that a *proper* inspection would have disclosed the dangerous condition.

■ We are not impressed by the suggestion that appellant must prevail because the hotel room had been under the "exclusive" control of Marx for about 20 hours before the accident. In the first place, there was no showing that it was under his "exclusive" control; we perceive nothing in the record to indicate that the maids had been forbidden entry to the room in that interim. Neither is there a suggestion that the premises had been placed on a "do not disturb" basis. Nothing appears which would lend credence to the proposition that the room could not have been inspected, whether by the maids or a plumbing inspector or any other authorized agent of the hotel. For the reasons stated, we hold that the court properly denied appellant's motion for a directed verdict on the question of liability.

■ Appellant presents a "hint," at least, that nearly all of the damages sustained by appellee stemmed from improper medical treatment, so that it should not be held responsible. That question has been resolved adversely to appellant's contention in this and virtually all jurisdictions. See City of Covington v. Keal, 280 Ky. 237, 133 S.W. 2d 49, 126 A.L.R. 905, for exegesis of the general rule. Simply put, the rule is that an injured person is required to use ordinary care and reasonable diligence to secure appropriate treatment of the injury; when he has exercised that care, he may recover damages to the full extent of his injuries, even though the doctor engaged for such treatment omits to use the most approved remedy, or the best means of cure, or fails to exercise as high a degree of care or skill as another doctor might have. The rule is recognized in Prosser, Torts, Sec. 511, pp. 318–319 (3d ed. 1964), in which it is written:

"A similar group of cases hold the defendant liable for the results of medical treatment of the injured victim. Even where such treatment is itself negligent, because of lack of proper skill or care, recovery for its consequences is permitted. It would be an undue compliment to the medical profession to say that bad surgery is no part of the risk of a broken leg. So long as the plaintiff himself has exercised reasonable care in his selection of a physician, the defendant will be liable for all ordinary forms of professional negligence."

■ To the same effect is Restatement, Second, Torts, Sec. 457. It is plain that Marx was not negligent in selecting Dr. Roles; the hotel selected him. The trial court ruled as a matter of law that Dr. Roles was not negligent, and had ample basis in the record for the holding. No attempt was made to show that the Atlanta doctor was negligent, and more importantly, there is no evidence that Marx was negligent in his selection of the Atlanta physician. In these circumstances the hotel may not mitigate the damages flowing from its

negligent activities because of the non-negligent and normal actions of Marx.

The judgment is affirmed.

WILLIAMS, C. J., and HILL, MILLIKEN, MONTGOMERY, PALMORE, and STEINFELD, JJ., concur.