Margaret **TUMEY**, Appellant,

v.

**W. H. RICHARDSON,** Appellee.

Court of Appeals of Kentucky.

Feb. 7, 1969.

W. Earl Dean, Dean & Dean, W. A. Wickliffe, Harrodsburg, for appellant.

J. L. Keller, Harrodsburg, Harry B. Miller, Robin Griffin, Miller, Griffin & Marks, Lexington, for appellee.

MELVIN T. STUBBS, by Special Commissioner.

In a collision between an automobile owned and operated by Margaret Tumey and a truck owned and operated by W. H. Richardson both parties sustained personal injuries. Mrs. Tumey brought action against Richardson, and Richardson counterclaimed, to recover for personal injuries and other damages. Judgment was entered pursuant to a jury verdict declaring both parties to have been negligent and finding for neither. Mrs. Tumey appeals and Richardson cross-appeals.

Mrs. Tumey contends primarily that the trial court committed reversible error in allowing the introduction of photographs depicting a reconstruction of the scene of the accident to show the relative locations of the vehicles involved following the collision. Richardson contends that the court erred in overruling his motion for a directed verdict at the close of all testimony, alleg-

ing that the physical facts showed the point of impact of the vehicles to be on his side of the highway.

The accident occurred in the daytime on a curve in Highway 68 at Shakertown. Mrs. Tumey was driving westward in her 1954 Ford automobile, and the curve was to its right. Richardson was traveling eastward in a Chevrolet van-type truck, approaching the curve to its left. Mrs. Tumey said that when she first observed the truck it was 75 to 100 feet from her vehicle and was then in its own lane of travel; that when the truck approached to within 30 feet of her automobile it cut to the left, crossed the centerline and struck her automobile. Richardson said that when he approached the curve he saw the Tumey automobile but three or four car lengths from his truck and completely on his side of the highway; that he applied his brakes, and that three or four seconds elapsed between the time he first saw the Tumey automobile and the collision. The point of collision between the vehicles was the left front of each.

In summary, the evidence pertinent to the question concerning the photographs was that immediately after the accident the two vehicles were stopped on the highway facing each other at an angle and separated by a distance variously estimated from 6 to 15 feet. After Mrs. Tumey had been taken by ambulance to a hospital a wrecker driver named Raley pulled her automobile a distance of 15 or 20 feet to the side of the road. Later, while the Richardson truck was still in the same position and place as it was immediately after the accident, a state trooper named Schooler arrived to investigate, and at his request the wrecker driver pulled the Tumey automobile back to the position he estimated it had occupied in the highway immediately before he had removed it in the first instance—that is, as it had been located just after the collision. The trooper than took several photographs showing the relative positions of the two vehicles, six of which pictures were introduced in evidence and are the exhibits that

Mrs. Tumey contends were erroneously admitted. Neither Mrs. Tumey nor Richardson was present when the Tumey car was moved back into the highway by Raley and the photographs were taken by the trooper.

Trooper Schooler testified that the left front wheel of the Richardson truck was situated three feet, ten inches south of the centerline of the highway and that the debris was situated immediately in front of the left front wheel of the truck. From his examination he fixed the point of impact of the two vehicles as being three feet, four inches south of the centerline.

Prior to the introduction of the photographs Richardson was asked whether they fairly and accurately represented the position of Mrs. Tumey's automobile and that of his own truck immediately following the collision. To each such inquiry he replied, "Yes, sir".

The wrecker operator, Raley, testified that at the direction of Schooler he had to the best of his knowledge placed the Tumey automobile back into the highway where he thought it to have been prior to its removal by his wrecker. On direct examination he was asked the following questions and supplied the following answers:

Q- "Mr. Raley, I have shown you some pictures earlier that have been identified as Defendant's Exhibits "1" through "6", and I want you to look at them again on the witness stand, and I'll ask you if those six pictures fairly and truly represent the position of the automobile of Mrs. Tumey and the truck of Mr. Richardson when you arrived at the scene?"

A- "Yes, sir, but the automobile shows in the picture closer than it actually was."

Q- "Closer to the truck?"

A- "Yes, sir."

On cross-examination Raley testified:

Q- "The pictures show Mrs. Tumey's automobile is closer to the truck than you say it was when you saw it, isn't that true?"

A- "Yes, sir."

Q- "Then this is not a fair and accurate picture of Mrs. Tumey's automobile, is it?"

A- "I don't think so."

Q- "And these are the pictures which Gordon Schooler took after he got there and told you to push Mrs. Tumey's automobile back up there so he could get some pictures—that is true, isn't it?"

A- "That is approximately where I thought it was at."

Another witness, named Berry, who arrived at the scene prior to the Tumey automobile's being pulled back to the edge of the highway by the wrecker, testified as follows:

Q- "Let me hand you some pictures, Mr. Berry, and I want to ask you to examine them. I have shown them to you previously but look at them now—they are Defendant's Exhibits '1' through '6'. Mr. Berry, do those pictures fairly and accurately represent the position of the Richardson truck and the Tumey car when you arrived at the scene, as best you can recall?"

A- "To the best of my knowledge, not knowing the exact distances between the vehicles, yes."

The general rule relating to the admission of photographs is stated as follows in 29 Am.Jur.2d, Evidence, § 785:

"It is well established that photographs of persons, things, and places, when duly verified and shown by extrinsic evidence to be faithful representations of the subjects as of the time in question, are ad-missible in evidence, both in civil and criminal cases, as aids to the jury in arriving at an understanding of the evidence, the situation or condition of objects or premises, the circumstances of an accident, or the condition or identity of a person when any such matter is relevant to the issues being litigated. Photographs, when properly authenticated, are, as a general rule, held to be admissible under two distinct rules— (1) to illustrate the testimony of a witness, and (2) as 'mute', 'silent', or 'dumb' testimony to the objects represented, rests fundamentally on the theory that they are the pictorial communications of a qualified witness, who uses this method of communication instead of, or in addition to, some other method. It follows that to be admissible, a photograph must first be made a part of some qualified person's testimony."

■ The case at bar involves the admission in evidence of photographs of what may be termed a partial reconstruction of the accident scene, taken within two hours following the accident, depicting the relative positions of the two vehicles involved, as they appeared to the driver of the wrecker, Raley following the collision. The reconstruction was effectuated by Raley's moving the Tumey automobile back onto the immediate scene from a position some 15 or 20 feet distant where he had moved it following the collision. It was done at the request of Trooper Schooler in connection with his investigation of the accident. Under such circumstances it cannot be said that the photographs were taken for the purpose of representing the theory of one party or the other. The photographs, before being received in evidence by the court, were authenticated by the testimony of appellee, Richardson, who stated them to be fair and accurate representations of the scene following the collision. His testimony in this respect was supported by that of Berry, who was at the scene prior to the temporary removal of the Tumey automo-

bile from its position following the impact. Raley was of the opinion that the photographs actually showed the Tumey automobile closer to the truck than it was when he arrived at the scene, but he testified that to the best of his knowledge he had replaced the automobile in the position it occupied on the highway prior to his pulling it back to the side of the roadway. We are of the opinion that this variance presented by Raley's testimony goes to the weight of the evidence rather than to the admissibility of the photographs.

In Bowling Green Gaslight Co. v. Dean's Ex'x, 142 Ky. 678, 134 S.W. 1115, commenting on the correctness of admitting into evidence a photograph of a telephone pole and wires with a man on the pole in the position of the decedent at the time he received the shock from which he later died, this court stated:

"It is a matter of common and approved practice to introduce on the trial of cases maps, models, and diagrams for the purpose of aiding the jury in getting a good understanding of the thing or place in controversy. Objects on these maps, models, and diagrams are pointed out and described to the jury by the witnesses, and frequently witnesses are allowed to take positions in the presence of the jury for the purpose of illustrating where the actors stood and their positions when the matter under investigation occurred, and we can think of no sound reason why a photograph that furnished an accurate reproduction of objects and places and things that are germane to the matter being investigated are not as competent as the other aids that we have mentioned. Of course, the accuracy of a photograph as a correct reproduction of what it purported to show should be established to the satisfaction of the court before being admitted as evidence; but, when its accuracy is shown, we have no doubt of its admissibility." (Cases cited.)

In Cincinnati, N.O. & T.P.Ry. Co. v. Duvall, 263 Ky. 387, 92 S.W.2d 363, holding that the trial court erred in rejecting photographs depicting reproduction of a lady attempting to board the identical coach by the same steps ascended by plaintiff when she received her alleged injuries, it was said:

"When such a reproduction is made and it appears that it was done under substantially the same conditions complained of, we can conceive of no legal reason why the pictured demonstrations should not be competent. If they be true and accurate representations of the situation being investigated, we can conceive of nothing that would be more illuminating to the jury or that would be better calculated to put its members in complete possession of the actual facts. We know of no rule disallowing such evidence in such circumstances, and the cases are numerous from this and other courts upholding its competency."

In Nunnelley's Adm'r. v. Muth, 195 Ky. 352, 242 S.W. 622, 27 A.L.R. 910, we held that the trial court properly rejected offered photographs depicting a reconstruction scene by Parker, a witness. Parker had visited the scene of the accident with a photographer before his deposition was taken and indicated to the photographer his conception of the respective locations of the Nunnelley automobile and the Muth truck at the time young Nunnelley, who had alighted from his father's vehicle, first became visible to the driver of the truck by which he was struck. Parker also indicated his own location on the pike with respect to the point of the accident. The offered photographs were taken showing machines at these locations, also showing a man on horseback where Parker claimed he had been, and a boy representing the deceased. The circumstances surrounding the taking of the photographs in that case are distinguishable from those in the case at bar. In the Nunnelley case the photographs represented Parker's recollection of moving

objects prior to the accident. As pointed out in that opinion, we have never held, where the question was raised, that photographs taken to show a witness's recollection of the location of moving objects are competent.

Again, in Welch v. Louisville & N. R. Co., 163 Ky. 100, 173 S.W. 338, a photograph was excluded when it was shown that some time after the accident the plaintiff went with the photographer and stood where she claimed to have been standing when the accident occurred. She posed for the picture and directed the photographer in its taking. We held the photograph to be self-serving so as to exclude its use to corroborate her testimony at the trial or to supply evidence of her precise position at the time of the injury. In the instant case the appellee neither directed nor supervised the taking of the photographs. In fact he was not present when the photographs were taken by Schooler.

From a study of the entire record we are of the opinion that the photographs were properly proven and that the trial court did not commit error in admitting them. It is to be observed that the admissibility of photographs is within the sound discretion of the trial court, and its ruling in this respect will not be interfered with on appeal except upon clear showing of an abuse of discretion. The trend of authority has been said to be to vest more discretion in the trial court in matters of this kind. 29 Am.Jur.2d, Evidence, § 785. The trial courts are allowed a broad discretion in admitting or rejecting photographs. Sloan v. Com., Dept. of Highways, Ky., 405 S.W.2d 294.

Appellee's brief states that his cross-appeal is moot if the pictures are held admissible. Hence we need not determine whether he was entitled to a directed verdict.

The judgment is affirmed on the appeal and cross-appeal.

All concur.