TRANSIT AUTHORITY OF RIVER
CITY [TARC] and Albert Clark,
Appellants,

v.

Charles VINSON, Bertha Linda Vinson
and State Farm Mutual Automobile
Insurance Company, Appellees.

Court of Appeals of Kentucky.

Nov. 15, 1985.

C. Thomas Hectus, David L. Gittleman, Armer H. Mahan, Jr., Louisville, for appellants.

Carl D. Frederick, Louisville, for appellee, Charles Vinson.

C. Michael Hatzell, Louisville, for appellee, Bertha Linda Vinson.

Robert R. deGolian, Louisville, for appellee, State Farm Mut. Auto. Ins. Co.

Before HAYES, C.J., and COMBS and HOWERTON, JJ.

COMBS, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court, entered pursuant to a jury verdict, in favor of appellees in a personal injury action.

Appellee, Charles Vinson, was injured in a collision between two coaches of the Transit Authority of River City [TARC] on August 2, 1982. Vinson was a passenger seated on the rear seat of TARC coach 121 when TARC coach 365 struck coach 121 in the rear, immediately behind appellee's seat. Witnesses testified that coach 365 was travelling at a speed of 20 to 25 miles per hour prior to impact.

Vinson received a head and neck injury and several fractured teeth from the force of the collision. Although dazed by the accident, Vinson walked to his nearby office and obtained a ride to his apartment with a co-tenant. Vinson's wife took him to a hospital emergency room for treatment, but the Vinsons returned home without seeing a doctor.

Several days later, Vinson went to the Emergency Medical Center in Louisville, which referred him to ear, nose and throat specialist, Dr. Francis Peisel. Dr. Peisel hospitalized Vinson for evaluation and enlisted the services of several consulting specialists, including an internist, an orthopedist, a psychiatrist, a psychologist, and a neurologist.

Prior to the accident, Vinson worked as an agent with State Farm Insurance for fifteen years, and the record shows that he consistently ranked among the top salesmen in Kentucky and the nation. After the accident, Vinson began suffering from seizures which caused him periods of unconsciousness as well as loss of bowel and bladder control. Both Vinson and his wife testified that he became sexually impotent after the accident. Numerous witnesses testified that the collision and its aftermath completely transformed Vinson's personality and left him disabled and withdrawn. Vinson was forced to close his office in February of 1984 because he was no longer able to function as an insurance agent.

Vinson brought this personal injury action against TARC and Albert Clark, the bus driver, to recover damages caused by

the bus collision. Mrs. Vinson intervened in the suit with a claim for loss of consortium, and State Farm Mutual Automobile Insurance Company intervened to recover the basic and added reparation benefits it had paid to Vinson as a result of the accident. TARC admitted liability for the accident, so the dispute at trial was limited to the issue of damages.

The trial in this case was a war of the experts, chronicled in thousands of pages of depositions, transcripts, evidence, and exhibits. TARC's medical experts agreed that there was no objective evidence of physical injury to support Vinson's "complaints", and several opined that he was faking, malingering, or trying to create the impression of physical disease. In contrast, appellee's experts testified that the collision impact caused organic brain damage, which triggered Vinson's seizures, cognitive impairment, and attendant psychological problems.

After hearing all the evidence, the jury awarded Vinson $432,000 for pain and suffering, medical expenses, and permanent impairment of earning power. It also awarded Mrs. Vinson $50,000 for loss of consortium and granted State Farm Mutual Insurance Company $28,290.16 reimbursement for reparation benefits.

Appellants attack the judgment in favor of appellees on five distinct grounds. First, appellants charge the lower court with error in excluding evidence of social security, disability and insurance benefits paid to Vinson after the accident. Appellants allege the evidence is relevant to show that Vinson was a malingerer.

■ Relevancy "is a determination which rests largely in the discretion of the trial court...." *Glens Falls Insurance Company v. Ogden*, Ky., 310 S.W.2d 547 (1958). However, the trial court possesses the power to exclude relevant evidence "if its probative worth is outweighed by the threat of undue prejudice to the opposing party." R. Lawson, *The Kentucky Evidence Law Handbook*, § 2.00 at 21 (2nd ed.1984). This court will not disturb a lower court's discretionary ruling on appeal absent an

abuse of discretion. *Id.* at 22. *See also Tumey v. Richardson*, Ky., 437 S.W.2d 201 (1969).

■ The courts of this Commonwealth consistently hold that evidence of income from collateral sources is not admissible at trial to reduce the amount of a damage award. *Hellmueller Baking Company v. Risen*, 295 Ky. 273, 174 S.W.2d 134 (1943), and cases cited therein. This is a fair and equitable rule. There is no logical or legal reason why a wrongdoer should receive the benefit of insurance obtained by the injured party for his own protection. It is a collateral contractual arrangement which has no bearing on the extent of the wrongdoer's liability. *Taylor v. Jennison*, Ky., 335 S.W.2d 902, 903 (1960).

*Rankin v. Blue Grass Boys Ranch, Inc.*, Ky., 469 S.W.2d 767 (1971), created a limited exception to the collateral source rule. *Rankin* held that employer payments to an injured employee reduce his claim for lost wages against a tortfeasor if he was legally entitled to the payments. However, Workers' Compensation or gratuitous payments by the employer do not reduce the award. The *Rankin* exception was later modified in *Davidson v. Vogler*, Ky., 507 S.W.2d 160 (1974), which stated that sick pay and vacation pay do not offset the employee's personal injury award against a tortfeasor because the right to payment was earned as part of his compensation prior to the injury. *Davidson* created a second limited exception to the rule, as follows:

> In the trial of a personal injury case, we believe that the propriety of admitting evidence relating to the claimant's receiving compensation *from his employer* for lost time is limited (1) to circumstances coming within the Rankin rule, as herein modified, or (2) to the circumstances where evidence of malingering on the part of the claimant is substantiated by some other competent evidence, evidence relating to such compensation being admissible then for the limited purpose of

showing malingering on the part of the claimant. *Id.* at 164 [Emphasis added].

Contrary to appellants' contention, *Rankin* and *Davidson* do not stand for the proposition that social security payments, disability and insurance benefits are admissible to establish malingering. In fact, our courts have long recognized that evidence of collateral source income to show malingering has little or no probative value. *Louisville & Nashville Rail Company v. Utz,* 299 Ky. 765, 187 S.W.2d 439 (1945).

The United States Supreme Court considered and rejected this very same argument in *Eichel v. New York Central Rail Company,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 207 (1963), as follows:

> In our view the likelihood of misuse by the jury clearly outweighs the value of [the evidence of collateral source income]. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension.... It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the [plaintiffs'] receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact. *Id.* at 317, 84 S.Ct. at 316.

We join in the *Eichel* court's fear that the likelihood of jury misuse outweighs the probative value of collateral source income. The record in this case contains abundant evidence involving far less danger of unfair prejudice to support appellants' charge of malingering. Appellants bombarded the court and jury with testimony that Vinson was faking, that Vinson was not impotent, that Vinson was exaggerating his symptoms and trying to create the impression of physical disease.

In our view, the disputed income evidence would be more likely to reduce Vinson's award than to change the jury's mind. This is precisely the evil which the collateral source rule guards against. Therefore, we hold that the trial court did not abuse his discretion in excluding the evidence of collateral payments. *Tumey v. Richardson,* 437 S.W.2d at 201.

Appellants' second complaint concerns the testimony of a witness at trial. During this litigation, TARC employed one J.B. Dawson as a private investigator to observe the Vinsons. Dawson and Bob Reynolds, an associate, secretly watched the Vinsons over a six month period and took numerous surveillance photographs. Reynolds submitted written activity reports to Dawson, who answered directly to TARC's counsel.

Appellees learned of Dawson's activities through discovery, took his deposition, and elected to call him as a witness. Prior to trial, TARC filed a memorandum with the court objecting to Dawson's proposed testimony and the introduction of his photographs and reports into evidence. The court overruled TARC's objection.

During the actual trial TARC did not object to any specific part of Dawson's testimony. In addition, TARC did not object to the introduction of the photographs and reports.

Appellants now argue that they were unfairly prejudiced at trial by Dawson's testimony and the introduction of his surveillance photographs and reports into evidence. Appellants reason that the investigative findings and reports are exempt from discovery under CR 26.02(3)(a) because they were prepared in anticipation of litigation. Appellants further argue that if the findings and reports are protected work product, then the investigator should not have been required to testify at trial.

In our opinion, TARC seeks to stretch the work product protection of CR 26.-02(3)(a) far beyond its limits. CR 26.-02(3)(a) exempts documents and other tangible things from discovery if the material is generated by a party's representative in anticipation of litigation.

The work product doctrine is a court-made rule, created in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and subsequently formalized in Fed.

R.Civ. P. 26(b)(3) and CR 26.02(3)(a). The rule recognizes that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 510, 67 S.Ct. 393, 91 L.Ed. 451. *Duplan Corporation v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480 (4th Cir.1973), expressed the policy behind the privilege as follows:

> *Hickman* clearly stands for the principle that the integrity of the adversary process must be safeguarded in spite of the desirability of the free interchange of information before trial.... This work product immunity is the embodiment of a policy that a lawyer doing a lawyer's work in preparation of a case for trial should not be hampered by the knowledge that he might be called upon at any time to hand over the result of his work to an opponent. *Id.* at 482.

The policy of protecting counsel's work product prior to litigation applies with equal force to the work product of the party's other representatives, including private investigators. *See United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). *See also* CR 26.-02(3)(a).

■ However, after the case is brought to trial, it becomes less important to protect "documents and tangible things ... prepared in anticipation of litigation" and more important to place the relevant facts before the court or jury. Consequently, there is no statutory evidentiary privilege for work product, and CR 26.-02(3)(a) does not purport to operate beyond discovery. Even if the rule survives discovery, work product immunity protects only the documents themselves and not the underlying facts. *In re: International Systems & Controls Corporation Securities Litigation,* 693 F.2d 1235 (5th Cir. 1982). For this reason, the court did not err in requiring TARC's investigator to testify at trial. The facts which he learned during his surveillance of the Vinsons were always outside the protection of CR 26.-02(3)(a).

■ The surveillance reports and photographs present a slightly different issue. The lower court overruled appellants' pretrial motion to exclude that evidence on the theory that this is not a work product case. We agree with the result reached by the lower court, but we disagree with its conclusion that this material is not work product.

The disputed reports and photographs are "documents and tangible things ... prepared in anticipation of litigation" within the work product discovery exemption of CR 26.02(3)(a). However, the investigative results do not reflect Dawson's "mental impressions, conclusions, opinions, and legal theories." Instead, that material simply documents certain events which occurred during this litigation

Work product which is primarily factual in nature is not absolutely immune from discovery under the rule. At best, it receives a qualified protection which is overcome if the opposing party shows substantial need of the material and inability to obtain it elsewhere without undue hardship.

In our opinion, Dawson's reports and photographs are examples of work product which is discoverable under the rule. That material represents a written record of Vinson's life over a six month period following the accident, compiled by a surreptitious observer. Vinson's post-accident activities were hotly contested throughout this litigation, and the investigative results are relevant unstaged evidence of those events. Furthermore, it would be impossible for appellees to duplicate that information at a later point in time. We conclude that the lower court did not err in refusing to apply the work product doctrine to Dawson's reports and photographs.

■ In any event, we believe appellants waived any claim of work product by allowing appellees to depose investigator Dawson. As a general rule, voluntary disclosure of work product to an adversary operates as a waiver of the doctrine's protec-

tion. *In re: Sealed Case*, 676 F.2d 793 (D.C.Cir.1982).

■ Appellants also allege that the investigative results should have been excluded at trial because the prejudicial impact of the evidence outweighed its probative worth. We disagree with appellants' contention. There is nothing offensive about Dawson's reports and photographs. He did not insinuate himself into the Vinsons' home or invade their privacy. He merely recorded some part of their activities while they were out in public. As we have already observed, we will not disturb evidentiary rulings of this nature absent a trial court abuse of discretion. *Tumey v. Richardson*, 437 S.W.2d at 201. We conclude that such abuse is not present in this case.

■ Appellants' third argument charges the trial court with error in refusing to instruct the jury not to award Vinson damages for "expenses, pain, suffering and other loss which could have been minimized by the exercise of reasonable care in obtaining the required medical attention." In essence, appellants fault Vinson for refusing to go to the Mayo Clinic and for declining to seek sexual counselling.

*Deutsch v. Shein*, Ky., 597 S.W.2d 141 (1980), describes the injured person's duty to seek appropriate treatment, as follows:

It is established law that the "injured person is required to use ordinary care and reasonable diligence to secure appropriate treatment of the injury; when he has exercised that care, he may recover damages to the full extent of his injuries, even though the doctor engaged for such treatment omits to use the most approved remedy, or the best means of cure, or fails to exercise as high a degree of care or skill as another doctor might have." *Id.* at 145. [citations omitted]. *See also Brown Hotel Company v. Marx*, Ky., 411 S.W.2d 911 (1967).

The record in this case shows that Vinson sought treatment at a medical center which referred him to ear, nose and throat specialist Dr. Peisel. Dr. Peisel called in four consulting specialists to assist with Vinson's treatment, and later referred him to a neuropsychologist for treatment.

Appellants did not attempt to prove that Vinson failed to exercise ordinary care in having his injury treated. There was no evidence that Vinson's refusing to go to the Mayo Clinic aggravated his injury. Likewise, there was no evidence that Vinson's doctors were incompetent or negligent, or that Vinson failed to exercise due diligence in choosing his doctors and in following their professional advice.

In our opinion, the evidence in this case does not authorize appellants' proposed instruction. *See City of Covington v. Keal*, 280 Ky. 237, 133 S.W.2d 49 (1939), which opined that an instruction similar to appellants' was not warranted by comparable evidence. Clearly, the trial court did not err in rejecting an instruction that is unsupported by the evidence. *See West Virginia Tractor and Equipment Company v. Cain*, Ky., 487 S.W.2d 910 (1972). *See also Smith v. Langley*, Ky., 410 S.W.2d 151 (1967).

■ Appellants' fourth argument alleges that the trial court erroneously excluded relevant evidence. According to appellants, Dr. Granacher should have been allowed to testify that diagnostic tests administered to Vinson are "not appropriate to be used in litigation" because litigation injects issues of interest and self-gain which might distort the test result.

We need not reach the merits of appellants' claim. Appellants failed to object to the exclusion of Dr. Granacher's testimony at trial, and neglected to place the excluded evidence in the record by avowal. Our cases consistently hold that a party's failure to object to testimonial exclusions at trial waives any claim of error. *See Freepartner v. Rutledge*, Ky., 405 S.W.2d 290 (1966). *See also CR 46*. In addition, excluded testimony must be placed in the record by avowal to be preserved for our review. *Williams v. Payne*, Ky., 515 S.W.2d 618 (1974). *See also Commonwealth, Department of Highways v. Jew-*

*ell,* Ky., 405 S.W.2d 678 (1966), and cases cited therein. CR 43.10.

Appellants' final argument addresses the trial court's jury instruction on Mrs. Vinson's claim. The instruction reads as follows:

The Defendant having conceded liability as to the Plaintiff, Charles Vinson, the law of this case is for the Plaintiff, Linda Vinson, on her claim for loss of consortium, and you will determine from the evidence and award her a sum or sums of money that will fairly and reasonably compensate her for any loss of the society, companionship, conjugal affection, physical assistance, aid and services of her husband, Charles Vinson, which she has sustained by reason of the injuries sustained by her husband, Charles Vinson, in the accident, not to exceed the sum of $500,000.00, the amount claimed.

Appellants allege that the trial court erred in "directing a verdict for Linda Vinson on liability." Although TARC admitted liability for negligent injury to Charles Vinson, appellants argue TARC never conceded that those injuries gave rise to a loss of consortium claim by Mrs. Vinson.

Loss of consortium is a statutory right of action in this Commonwealth, governed by KRS 411.145:

DAMAGES FOR LOSS OF CONSORTIUM

(1) As used in this section "consortium" means the right to the services, assistance, aid, society, companionship, and conjugal relationship between husband and wife, or wife and husband.

(2) Either a wife or husband may recover damages against a third person for loss of consortium, resulting from a negligent or wrongful act of said third person.

██ When TARC admitted liability for negligent injury to Charles Vinson, it became liable under KRS 411.145 to Mrs. Vinson as a matter of law for any loss of consortium which resulted from that injury.

The fact that TARC contested the severity of Vinson's injuries throughout this litigation does not relieve it of liability for Mrs. Vinson's claim. The severity of Vinson's injuries was a matter for the jury to consider in deciding whether or not Mrs. Vinson suffered any loss of consortium. The jury was always free to decide that Vinson's injuries were too slight to impact Mrs. Vinson's right of consortium.

Appellants contend that TARC's admission of liability to Vinson has no bearing on Mrs. Vinson's claim. Relying on *Kotsiris v. Ling,* Ky., 451 S.W.2d 411 (1970), appellants reason that loss of consortium is a non-derivative claim, totally independent of the underlying tort action.

We disagree with appellants' interpretation of *Kotsiris.* That case permitted the wife to bring a loss of consortium action although the husband had previously settled his tort claim. Nothing in *Kotsiris* suggests that a party which admits liability for a tortious injury should be permitted to resurrect that issue in a related loss of consortium action. In our view, TARC's admission of liability for Vinson's injuries precluded TARC from contesting that same issue in Mrs. Vinson's claim. *Sedley v. City of West Buechel,* Ky., 461 S.W.2d 556 (1971). We conclude that the lower court's jury instruction satisfied the requirements of KRS 411.145.

The judgment of the Jefferson Circuit Court is affirmed.

HAYES, C.J., concurs.

HOWERTON, J., concurs in result only.