RENDERED:  FEBRUARY 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0120-MR

PATSY ANN HIGGINS                                                                    APPELLANT


APPEAL FROM LIVINGSTON CIRCUIT COURT
v.            HONORABLE CLARENCE A. WOODALL, III, JUDGE
ACTION NO. 17-CI-00006


DR. WILLIAM BARNES; DR. DEMETRIUS
PATTON; AND TRI-RIVERS HEALTHCARE, PPLC            APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, GOODWINE, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Patsy Ann Higgins ("Appellant") appeals from a jury

verdict rendered in Livingston Circuit Court in favor of Dr. William Barnes and

Dr. Demetrius Patton.  Appellant argues that the circuit court erred in granting a

directed verdict and dismissing her informed consent claim; in refusing to instruct

the jury on subsequent malpractice; failing to grant a mistrial after defense counsel

improperly asked her about pension and disability benefits in the presence of the jury; in improperly limiting certain expert testimony; in denying her an opportunity to correct a mistake in testimony; in improperly denying her motion for a change of venue; and in prohibiting her counsel from discussing the burden of proof. She seeks an opinion and order reversing the judgment on appeal and ordering a new trial. For the reasons addressed below, we find no error and affirm the judgment on appeal.

## FACTS AND PROCEDURAL HISTORY

Appellant has suffered from recurrent diverticulitis for much of her adult life, resulting in three colon resection surgical procedures to remove diseased portions of her bowel. The first of these surgeries was performed in 2004, which resulted in Appellant being hospitalized after release. In 2012, Appellant suffered an acute flareup of her disease with bowel blockage resulting in her second colectomy, which again resulted in several post-surgical hospitalizations prior to full recovery. Appellant also received a surgical hernia repair in 2014.

Appellant was hospitalized in late 2015 with recurrent symptoms of diverticulitis, which resulted in Dr. Barnes discussing with her the possibility of laparoscopic surgery to remove another portion of her colon. On January 26, 2016, Dr. Barnes and Dr. Patton performed a laparoscopic colectomy on Appellant at Livingston County Hospital to remove a diseased portion of her colon. Prior to

surgery, Dr. Barnes discussed risks of surgery with Appellant including the possibility of infection, cardiac arrest, pneumonia, and blood clots. Dr. Barnes told Appellant that, if required, he would convert the laparoscopic procedure to an open surgical procedure. Dr. Patton also spoke with Appellant about the procedure and risks. After fully discussing the matter, Appellant and Dr. Barnes each signed a consent form.

Appellant underwent the laparoscopic colectomy on January 26, 2016. In the first few days after surgery, Appellant suffered significant pain consistent with the procedure, which, according to Dr. Barnes, made her reluctant to become ambulatory. Approximately 13 days after surgery, Appellant developed pneumonia which was confirmed by bronchoscopy. The infection spread, her condition worsened, and she developed a systemic infection.

On January 31, 2016, and February 1, 2016, Appellant's condition worsened and she was placed on a ventilator. While intubated and sedated, Appellant pulled out her intubation tube and suffered cardiopulmonary arrest from which she was resuscitated. Dr. Barnes then transferred Appellant to Lourdes Hospital for more specialized care.

At Lourdes Hospital, Dr. David Mauterer undertook Appellant's care. A CT scan conducted on February 3, 2016, showed a retroperitoneal abscess. Dr. Mauterer performed an exploratory surgical procedure on Appellant that day to

address the abscess and investigate its possible cause. While Dr. Mauterer surmised that Appellant may have had a perforation in her colon, he did not find one. Thereafter, Appellant had a protracted hospitalization and treatment with antibiotics to address the infection.

Appellant eventually recovered and was released from Lourdes Hospital. Thereafter, she filed the instant medical negligence action in Livingston Circuit Court against Drs. Barnes and Patton; their practice group Tri-Rivers Healthcare, PPLC (collectively "Appellees"); and Livingston County Hospital. She alleged that the operation caused her to sustain permanent injury causing significant disability which left her unable to continue working as a heavy equipment operator. The hospital settled with Appellant and the matter proceeded to a jury trial on the claims against Drs. Barnes and Patton and Tri-Rivers Healthcare. The focus of her claim was that Drs. Barnes and Patton injured her bowel and failed to provide a sufficient level of diagnostic care and treatment in the days following surgery which resulted in lasting injuries and disability.

The matter proceeded to trial over the course of several days. Seventeen witnesses testified and 22 exhibits were entered into the record. At the conclusion of the proceeding, the circuit court rendered a directed verdict in favor of Appellees on Appellant's informed consent claim. The court determined that Appellant had not demonstrated that, but for a lack of informed consent, she would

not have consented to the procedure. The matter went before the jury on all remaining issues. The jury returned a verdict in favor of the Appellees and this appeal followed.

## ARGUMENTS AND ANALYSIS

Appellant raises several arguments in support of her contention that the judgment on appeal should be reversed, and that she is entitled to a new trial. She first argues that the Livingston Circuit Court committed reversible error in granting a directed verdict in favor of Drs. Barnes and Patton on her claim of negligence resulting from a failure to obtain informed consent. Appellant testified at trial regarding the information that Drs. Barnes and Patton communicated to her about her surgery, and the conditions under which they would transition from a laparoscopic surgery to an open surgery. The parties agree that Drs. Barnes and Patton told Appellant that they would transition from a laparoscopic surgery to an open surgery if they encountered a substantial amount of scar tissue and adhesions justifying the change. Appellant testified that she consented to the laparoscopic surgery only on the conditions presented by the doctors, because laparoscopy was more likely than open surgery to cause bowel injury when scarring and adhesions were present. The doctors testified that they encountered extensive scarring, but chose to continue with the laparoscopic procedure rather than open surgery. The focus of Appellant's argument on this issue is that she would not have consented to

the surgery had she known that the doctors would have continued with laparoscopic, rather than open surgery, after encountering extensive scarring and adhesions.

A claim of lack of informed consent is a negligence claim with the duty defined by statute. Kentucky Revised Statutes ("KRS") 304.40-320.

> In any action brought for treating, examining, or operating on a claimant wherein the claimant's informed consent is an element, the claimant's informed consent shall be deemed to have been given where:
>
> (1) The action of the health care provider in obtaining the consent of the patient or another person authorized to give consent for the patient was in accordance with the accepted standard of medical or dental practice among members of the profession with similar training and experience; and
>
> (2) A reasonable individual, from the information provided by the health care provider under the circumstances, would have a general understanding of the procedure and medically or dentally acceptable alternative procedures or treatments and substantial risks and hazards inherent in the proposed treatment or procedures which are recognized among other health care providers who perform similar treatments or procedures[.]

*Id.* "[P]hysicians have a general duty to disclose to their patients in accordance with accepted medical standards the risks and benefits of the treatment to be performed." *University Medical Center, Inc. v. Shwab*, 628 S.W.3d 112, 121 (Ky.

2021) (internal quotation marks and citation omitted).[1] "A physician must comply with both subsections [of KRS 304.40-320] in order to satisfy the statutory standard for obtaining informed consent." *Id.* (citation omitted). In order to meet the requirements of the first subsection, a plaintiff "must show that the process by which the medical defendants obtained her consent did not comply with 'accepted standards' within the medical profession." *Id.* Subsection 2 addresses the content of the information provided, in that a reasonable individual must have a general understanding of the risks recognized among healthcare providers who perform similar treatments. *Id.* at 127.

The circuit court granted Appellees' motion for a directed verdict upon finding that Appellant did not prove causation on her informed consent claim. Specifically, the court determined that Appellant did not demonstrate that, but for the alleged lack of information provided to her, she would not have consented to the procedure. We find no error in this conclusion. As part of the consent process, Appellant was advised that her surgeons retained the option of converting the laparoscopic procedure to an open procedure if the circumstances warranted. Though they encountered significant scarring, which the record demonstrates was

---

[1] *Shwab* overruled that portion of *Sargent v. Shaffer*, 467 S.W.3d 198 (Ky. 2015), which held that the substantiality of a risk inherent in a proposed treatment can be proven by lay testimony. *Shwab* now requires expert testimony.

not unexpected given the number of prior surgeries performed on Appellant, the surgeons continued with and completed the laparoscopy.

> A trial court may grant a directed verdict only if the evidence is insufficient to sustain a verdict. It cannot direct a verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ. A motion for directed verdict admits the truth of all evidence which is favorable to the party against whom the motion is made.

> And in ruling on the motion, the trial court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion. Whenever there is conflicting proof, the court must reserve to the jury the determination and resolution of such conflicts. And the judge may not consider the credibility or weight of the evidence, the evaluation of which being solely a function of the fact-finding jury.

*Asbury University v. Powell*, 486 S.W.3d 246, 257 (Ky. 2016) (internal quotation marks and citations omitted). *See* Kentucky Rules of Civil Procedure ("CR") 50.01.

The Livingston Circuit Court correctly determined that the evidence on Appellant's informed consent claim was insufficient to sustain a verdict. We find no error on this issue.

Appellant next argues that the Livingston Circuit Court erred when it failed to give a jury instruction on subsequent malpractice. At the close of the proceeding, Appellant requested that the circuit court instruct the jury that the

alleged malpractice of her subsequent medical provider, Dr. Mauterer, should not be considered in determining the liability of Drs. Barnes and Patton. Citing *City of Covington v. Keal*, 280 Ky. 237, 133 S.W.2d 49 (1939), *Wimsatt v. Haydon Oil Company*, 414 S.W.2d 908 (Ky. 1967), and the RESTATEMENT (SECOND) OF TORTS Section 457, Appellant asked the circuit court to admonish the jury not to consider subsequent malpractice and that Drs. Barnes and Patton be prohibited from referencing subsequent malpractice in their closing arguments. Appellees responded that under *Sakler v. Anesthesiology Associates, P.S.C.*, 50 S.W.3d 210 (Ky. App. 2001), they were permitted to introduce rebuttal evidence on the issue. The circuit court agreed with Drs. Barnes and Patton, and declined to give the requested instruction.

Appellant asserts that the arguments of Drs. Barnes and Patton on this issue confused the jury, misstated the law, and prejudiced the proceeding by forwarding an incorrect legal argument to the jury. She argues that the jury should have been alerted to the fallacy of Appellees' theories that, 1) subsequent care should have been given to fix their deviations and that it was acceptable to solely blame Dr. Mauterer, and 2) it was permissible under the law for the jury to excuse Appellees' negligence by pointing the finger at Dr. Mauterer as the culprit.

In 2018, a panel of this Court determined that a trial judge may properly exercise discretion in allowing testimony in a medical negligence action

which points to the fault of subsequent non-parties on the issue of causation. *See Palmer v. Abedi*, No. 2016-CA-000520-MR, 2018 WL 4050749 (Ky. App. Aug. 24, 2018). As in the matter at bar, the plaintiff in *Palmer* underwent a surgical procedure to remove part of her colon to treat diverticulitis. Sometime during or after surgery, she experienced a perforation or fistula with resultant complications. On appeal, a panel of this Court determined that the trial court properly allowed the defendant surgeon, Dr. Abedi, to argue that a subsequent treating physician was negligent in causing the injury.

As in *Palmer*, the Appellees herein asserted that Dr. Mauterer, who treated Appellant after her transfer to Lourdes Hospital, could have been responsible for her claimed injuries. A medical negligence defendant may produce evidence which tends to discredit the plaintiff's theory of the case, including evidence of other possible causes of the plaintiff's injury. *Sakler*, 50 S.W.3d at 214 (quoting *Wilder v. Eberhart*, 977 F.2d 673 (1st Cir. 1992), *cert. denied* 508 U.S. 930, 113 S. Ct. 2396, 124 L. Ed. 2d 297 (1993)). Drs. Barnes and Patton produced such evidence at trial, and the Livingston Circuit Court properly exercised its discretion in refusing to instruct the jury to disregard such evidence.

Appellant goes on to argue that she was entitled to a mistrial after the Appellees intentionally violated an evidentiary ruling by questioning her about her pension and disability insurance benefits. She directs our attention to case law

standing for the rule that evidence of income from a collateral source is not admissible to reduce the amount of a damage award, and that evidence of a collateral source is likely prejudicial.

The first exchange at trial between Appellant and defense counsel to which she now objects consisted of a question about her pension. Defense counsel asked if she had vested pensions through both the Tennessee Valley Authority and her labor union, to which Appellant responded affirmatively. Appellant's trial counsel objected to the question, but was overruled. The second exchange occurred when defense counsel questioned Appellant about a short-term disability benefit application she completed prior to the surgery at issue. In response to questioning, Appellant acknowledged that she was disabled and unable to work beginning the month before surgery. Appellant's counsel objected to this questioning as well. The circuit court sustained Appellant's objection on this second issue insofar as it might lead to a discussion of a collateral source, but allowed the question for the sole purpose of establishing that Appellant was disabled prior to surgery.

"The collateral source rule provides that benefits received by an injured party for his injuries from a source wholly independent of, and collateral to, the tortfeasor will not be deducted from or diminish the damages otherwise recoverable from the tortfeasor." *Schwartz v. Hasty*, 175 S.W.3d 621, 626 (Ky.

-11-

App. 2005) (citations omitted). Due to the likelihood of prejudice, evidence of a collateral source is generally inadmissible. *Transit Authority of River City TARC v. Vinson*, 703 S.W.2d 482, 485 (Ky. App. 1985).

The vested pensions are not collateral sources of payment for disability. This does not implicate the collateral source rule and the circuit court did not err in overruling Appellant's objection. As to the exchange about Appellant's application for disability benefits prior to surgery, the circuit court properly allowed the question for the limited purpose of establishing Appellant's disability before surgery. We will not disturb the circuit court's discretionary ruling on admission of evidence absent a showing of abuse of discretion. *Id.* at 484. The questioning regarding Appellant's disability was relevant and did not impugn the collateral source rule. The Livingston Circuit Court did not abuse its discretion on this issue, and accordingly we find no error.

Appellant next argues that the circuit court improperly and arbitrarily limited the testimony of Dr. Fred Simon. After the disclosure deadline, and based on CR 26.05, Appellant sought to alter the disclosed opinion of her expert, Dr. Simon, by changing the date on which he believed an abdominal CT scan should have been ordered by Dr. Barnes. The circuit court denied the request. Appellant asserts that this constituted an abuse of discretion.

The question for our consideration is whether the Livingston Circuit Court committed reversible error in failing to grant the request. Appellant's proffered supplementation of Dr. Simon's expert disclosure occurred after the disclosure deadline and was not timely. As the circuit court may properly exercise discretion in evidentiary matters, *Vinson*, 703 S.W.2d at 484, and seeing no abuse of discretion, we find no error.

Appellant goes on to argue that the circuit court erred in prohibiting the introduction of deposition testimony given by Dr. Patton on two occasions in an unrelated and prior civil action. That testimony consisted of Dr. Patton answering questions about his ruptured kidney, the pain arising therefrom, and whether he had to adjust his surgical practice to accommodate the pain. The Livingston Circuit Court initially allowed the prior deposition to be read to the jury to impeach Dr. Patton's testimony in the instant action. After the deposition was read to the jury, the circuit court determined that it was not admissible. Appellant asserts that this was in error, prejudicing the proceeding against her, and warrants a new trial.

Appellant argues that the circuit court incorrectly concluded that Dr. Patton's testimony in the instant matter that his kidney pain was "potentially incapacitating" was not inconsistent with his deposition in the prior civil action that his pain was "incapacitating almost." Because the court determined that the

two statements were consistent, it disallowed the introduction into evidence of the prior statement for the purpose of impeaching Dr. Patton's testimony in the instant action. Appellant has not demonstrated that the circuit court erred on this issue.

Appellant's sixth argument is that the circuit court abused its discretion in denying her the opportunity to correct a mistake made by Dr. Richard Katz. During her case in chief, Dr. Katz testified that on the day of a scheduled examination, Appellant drove herself to St. Louis. Appellant states that this testimony was in error, as it was Appellant's sister-in-law, Marla, who actually drove her to St. Louis. The circuit court denied Appellant's request to recall Dr. Katz for the sole purpose of correcting this mistake. Appellant argues that this denial was erroneous and constituted prejudicial harm.

"It is within the sound discretion of the trial court to regulate the order of presentation of proof during a trial." *Fraser v. Miller*, 427 S.W.3d 182, 184 (Ky. 2014) (citation omitted). *See also* CR 43.02. The court may change the order of proof, though it is not required to do so, "for good reasons in furtherance of justice[.]" *Fayette County v. Veach*, 294 S.W.2d 541, 545 (Ky. 1956) (internal quotation marks and citation omitted). As the order of proof at trial falls within the sound discretion of the circuit court, *Fraser*, *supra*, and as the purported mistake Appellant sought to correct would have little bearing on the outcome of the proceeding, we find no error on this issue.

Appellant next asserts that the Livingston Circuit Court abused its discretion in denying her motion for a change of venue. She argues that she was entitled to a new venue because 1) Drs. Barnes and Patton appeared in a magazine advertisement which provided general information about their practice, the physicians themselves, and the procedures they perform; and 2) a public service health information segment on regional TV channel WPSD on Wednesday, October 21, 2020, featured Dr. Barnes. Appellant contends that the magazine and television segment may have unduly influenced the jury and justified a change of venue.

> KRS 452.010(2) provides that,
>
> A party to any civil action triable by a jury in a Circuit Court may have a change of venue when it appears that, because of the undue influence of his adversary or the odium that attends the party applying or his cause of action or defense, or because of the circumstances or nature of the case he cannot have a fair and impartial trial in the county.

The question for our consideration is whether the magazine advertisement and television segment constitute "undue influence [or] . . . odium" resulting in an inability to have a fair and impartial trial in Livingston County. As to the magazine advertisement, the matter was addressed in *voir dire* when the court asked potential jury members if they were aware of the advertisement. Only one person answered in the affirmative and he was dismissed from service.

-15-

Regarding the public service segment featuring Dr. Barnes, the court asked the jury if any members had seen the pre-recorded segment. No jury member responded in the affirmative. A circuit court's ruling on a motion seeking a change of venue is reviewed for abuse of discretion. *Peel v. Bramblett*, 305 Ky. 577, 204 S.W.2d 565, 566 (1947). We find no abuse of discretion, and thus no error.

Appellant's final argument is that the circuit court abused its discretion by denying her request to question potential jurors about the burden of proof during *voir dire*. Appellant originally moved *in limine* to bar either party from questioning potential jury members about the burden of proof. This motion was granted. Thereafter, Appellant sought to withdraw the motion so that she could question jurors on the burden of proof. The court denied Appellant's request to withdraw the motion because it had already been granted. Appellant asserts that this constitutes reversible error.

"A trial court has wide discretion in permitting or limiting the voir dire examination of prospective jurors in civil cases." *Farmer v. Pearl*, 415 S.W.2d 358, 360 (Ky. 1967) (citation omitted). Appellant has not demonstrated that the Livingston Circuit Court abused its discretion in granting her motion *in limine* and then refusing to reverse that decision. We find no error on this issue.

## CONCLUSION

After thorough review, we find no error. The circuit court did not err in granting a directed verdict on the issue of informed consent in favor of Appellees. In addition, the Livingston Circuit did not err in refusing to instruct the jury on subsequent malpractice; in failing to grant a mistrial after defense counsel asked her about pension and disability benefits in the presence of the jury; in limiting certain expert testimony; in denying her an opportunity to correct a mistake in testimony; in denying her motion for a change of venue; nor, in prohibiting her counsel from discussing the burden of proof. For these reasons, we affirm the judgment of the Livingston Circuit Court.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| Edwin A. Jones | Patricia C. Le Meur |
| W. Lucas McCall | John W. Phillips, Jr. |
| Paducah, Kentucky | Katherine T. Watts |
|  | Louisville, Kentucky |