RENDERED: SEPTEMBER 12, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1062-MR

COMMONWEALTH OF KENTUCKY                 APPELLANT

v.            APPEAL FROM SIMPSON CIRCUIT COURT
HONORABLE MARK A. THURMOND, JUDGE
ACTION NO. 23-CR-00004

MARLON RENAY JACKSON                 APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: COMBS, EASTON, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: The Commonwealth appeals from an August 5, 2024, Order

of the Simpson Circuit Court that denied its Motion in Limine pursuant to

Kentucky Rules of Evidence (KRE) 404(b). We affirm in part, reverse in part, and

remand.

Marlon Renay Jackson ("Jackson") is awaiting trial on two counts of

first-degree unlawful transaction with a minor and two counts of third-degree rape

in Simpson County. The minor victim ("D.R.") was placed in Jackson's home as a foster child, until she was removed due to allegations of sexual abuse by Jackson from a different foster child. From those allegations, the investigation into Jackson and D.R.'s relationship began.

The Commonwealth laid out the factual allegations in its brief as follows:

> D.R. stated that she and Jackson had vaginal sex at least three times per week in April and May 2022 in Glasgow, Kentucky. In May 2022, the Jacksons moved from Glasgow, Kentucky to Bowling Green, Kentucky. D.R. acknowledged that she and Jackson did not engage in sexual intercourse as often in Bowling Green because [name omitted] was home while school was out for summer. D.R. added that she and Jackson had sex about ten times between May and July 2022.
>
> . . . . D.R. revealed that she had continued to engage in a sexual relationship with Jackson after being removed from his home in July 2022. D.R. stated that a few days after her initial . . . interview, she texted Jackson, and he wanted to meet her at a hotel in Simpson County. D.R.'s friend dropped her off at a gas station in Simpson County, and Jackson picked her up and took her to the Baymont Inn. At the Baymont Inn, D.R. and Jackson "engaged in vaginal sex." Investigators from the Kentucky State Police obtained records from the Baymont Inn showing that Jackson rented a room on August 2, 2022, and checked out the next day. In the same interview, D.R. added that she also met Jackson at the Econo Lodge in Simpson County, where they again had vaginal sex. Econo Lodge records obtained by law enforcement showed that Jackson rented a room on August 11, 2022, and checked out on August 15, 2022.

The Commonwealth filed a motion pursuant to KRE 404(b) to introduce certain evidence of sexual activity between Jackson and D.R. prior to the occurrences in Simpson County for which he is presently facing trial. The trial court succinctly described the evidence for which the Commonwealth sought admission in its motion:

> (1) [testimonial] evidence of an occurrence in March 2022 in Barren County, Kentucky in which Jackson is alleged to have shown [D.R.] a picture of his penis on his phone and masturbated in front of her; (2) [testimonial] evidence of another incident approximately one week later in which Jackson is alleged to have had unprotected sex with [D.R.]; (3) [testimonial] evidence of frequent sex between Jackson and [D.R.] thereafter; (4) [testimonial] evidence of sex between Jackson and [D.R.] in Warren County, Kentucky; and (5) evidence of a video of a sex act [occurring in Warren County] alleged to be between Jackson and [D.R.] which was retrieved from a phone used by [D.R.].

Of this evidence, the trial court permitted only testimonial evidence of the sexual intercourse between D.R. and Jackson in Barren and Warren Counties. The trial court specifically excluded the testimonial evidence of the lewd picture and masturbation ("the Barren County evidence") on the grounds that it was "too dissimilar" from the current charges to be admissible pursuant to KRE 404(b). The trial court also excluded the video evidence of sexual intercourse in Warren County between Jackson and D.R. ("the Warren County video") on the grounds

-3-

that, while probative, it was unduly prejudicial and inadmissible pursuant to KRE 403. It is from these evidentiary rulings that the Commonwealth appeals.

When reviewing a trial court's evidentiary ruling, the appropriate standard is abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000) (citing *Turney v. Richardson*, 437 S.W.2d 201, 205 (Ky. 1969)). Abuse of discretion is a highly deferential standard and a trial court's decision will not be overturned unless it "was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Following a careful review of the briefs and the law, we hold the trial court did not abuse its discretion by finding that the Warren County video was unduly prejudicial while allowing testimony thereof. As there appears to be no objection by either party as to the trial court's finding that the proffered Warren County video was relevant pursuant to KRE 404(b)(1), we focus our analysis on the trial court's determination regarding the video's prejudicial effect. When analyzing the admissibility of evidence, the Kentucky Supreme Court read KRE 401 and KRE 403 together to require inquiries into a proposed piece of evidence's relevance, probativeness, and prejudice. *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994). The threshold to admissibility of evidence is that it be relevant, that is tending to prove or disprove a material fact. KRE 401. If evidence is

relevant, it is generally admissible, absent an exception set forth by law. KRE 402. One such exception is that evidence, though relevant, "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice . . . or needless presentation of cumulative evidence." KRE 403.

In its August 5, 2024, Order, the trial court correctly noted that "the risk of undue prejudice may be mitigated in some cases by an admonition [to the jury] limiting how the prior act evidence may be used . . . and also by limiting 'how much the jurors are permitted to hear about "other crimes."'" *Jenkins v. Commonwealth*, 496 S.W.3d 435, 459 (Ky. 2016) (citing ROBERT G. LAWSON, KENTUCKY EVIDENCE LAW HANDBOOK § 2.30[2][d] (5th ed. 2013)). The trial court had already permitted testimony from D.R. regarding the sexual activity depicted in the Warren County video. Utilizing the *Jenkins* analysis, the trial court determined that the proper way to limit the prejudicial effect of Jackson's prior bad act was not to prohibit any reference to it, but instead to limit its introduction to only testimony thereof, rather than showing the jury the "particularly prejudicial and inflammatory . . . shocking sexually-explicit video." This analysis aligns with the Kentucky Supreme Court's ruling in *Bounds v. Commonwealth*, which affirmed the exclusion of unindicted photographs of child pornography but admitted testimony thereof pursuant to KRE 404(b)(1) and KRE 403. 630 S.W.3d

651, 659 (Ky. 2021). The trial court's decision to exclude the Warren County video is grounded in sound legal principles and was not an abuse of discretion.

And while the primary question presented is whether the circuit court abused its discretion by permitting 404(b) testimony about prior videotaped sex acts but not allowing the videos to be shown, we should also include consideration of a juror-centered approach to evidence. The circuit court did so and, apart from the prejudicial effect as applied to Jackson, wanted to avoid exposing jurors to disturbing videos, if possible. While we do not find that this was an abuse of discretion, it is important to recognize that this ruling does not prevent evidence of the videos under all circumstances.

The circuit court ruling should be understood to address only the parameters for the introduction of the Commonwealth's 404(b) evidence in its case in chief. The policy of avoiding unnecessary exposure of the jury seeing videos of sex acts might be served by a detective or other witness who has actually observed the videos stating that the videos exist, assuming no actual controversy that the videos show Jackson in his interactions with D.R. Such a witness could provide his or her own personal knowledge of what the videos show and where they came from. We cannot rule on actual admissibility of such evidence but merely point out that there may be a way to realize some of the probative value without showing

the videos. This remains a question for the circuit court to determine based on specifics of admissibility during the trial.

Also, if there is any insinuation, much less testimony as part of the defense case, to suggest that D.R. is untruthful or mistaken about the prior events, then introduction of the videos must be reexamined. The prejudicial effect would then weigh differently in the evaluation of the probative value of the evidence.

As to the other evidentiary ruling, we must conclude that the trial court abused its discretion by finding that testimony regarding the masturbation and showing the photograph of his penis was "too dissimilar" to be admitted pursuant to KRE 404(b)(1). The court found that "Jackson is charged with engaging in illegal vaginal sex with [D.R.] . . . He is not charged with providing [D.R.] with explicit material or of engaging in lewd behavior in front of her." The court appears to conflate the necessity of the relatedness of the acts to mean that they must be identical or "so similar to the crime on trial as to constitute a so-called signature crime" to be admissible pursuant to KRE 404(b)(1). *Dickerson v. Commonwealth*, 174 S.W.3d 451, 469 (Ky. 2005). That analysis is more appropriate when the prior bad acts are admitted to show identity or modus

operandi. In Jackson's case, the Commonwealth proffered the Barren County evidence to show a common scheme or plan pursuant to KRE 404(b)(1).[1]

The Kentucky Supreme Court thoroughly analyzed the complexities of the "common scheme or plan" exception in *English*, 993 S.W.2d at 943-44. This exception is "one 'embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others.' Thus, 'common scheme or plan' was intended to refer to the fact that the charged offense was but one of two or more related criminal acts." *Id.* at 943 (citing *Douglas v. Commonwealth*, 307 Ky. 391, 211 S.W.2d 156, 157 (1948)).

The *English* Court illustrates the common scheme or plan analysis through an example of a court admitting evidence of a prior automobile theft in a trial for armed robbery, in which the "getaway car" was the object of the prior automobile theft, as part of a common scheme. 993 S.W.2d at 944. In such a case, as here, the prior bad acts are not necessarily similar in nature, though they are

---

[1] This Court recently published an Opinion in the case of *Geno v. Commonwealth*, No. 2023-CA-1368, 2025 WL 2005952, ___ S.W.3d ___ (Ky. App. Jul. 18, 2025), *petition for rehearing filed* (Aug. 7, 2025), which reversed the conviction on the basis of erroneous admission of evidence pursuant to KRE 404(b). In that case, the defendant was on trial for masturbating in front of his minor step-daughter, and the prior bad acts proffered into evidence were convictions on pleas of guilty by the defendant for two separate incidents of masturbating in public in front of two adult women whom he did not know. The trial court admitted the prior convictions as evidence of modus operandi pursuant to KRE 404(b). However, as this Court noted in its Opinion reversing, the prior acts were not so peculiar as to be reasonably attributable to the defendant for the purposes of identification. This Court acknowledges the Opinion in *Geno*, but finds it distinguishable from the case herein, in which the Commonwealth is arguing for admission of prior acts as evidence of a common scheme or plan to show the escalation in sexual acts between Jackson and the same victim.

"part and parcel" of a greater plan. In Jackson's case, the prior bad acts laid the groundwork for the charged offense. As in many cases in which grooming is alleged, the Commonwealth will attempt to prove at trial that Jackson began testing the waters of a sexual relationship with D.R. by engaging in lesser acts, then moved on to the extent of renting a hotel room in a different county to engage in vaginal intercourse.

Perhaps most illustrative of this case, in *Riggle v. Commonwealth*, the trial court permitted the Commonwealth to offer testimony from three prior victims "to establish that [the defendant's] abuse began as kissing and touching of their breasts and buttocks, and progressed in severity." 686 S.W.3d 105, 111 (Ky. 2023). The Kentucky Supreme Court, upon review, stated that "it is clear to us that [the victims'] testimony was not offered merely to prove that [the defendant] had a sexual proclivity toward young girls, but rather to prove that he cultivated a culture of abuse in his home that groomed his victims . . . to yield to that abuse. Each instance of unwanted sexual touching was 'part and parcel' of that larger scheme or plan." *Id*. at 112-13.

Rather than properly analyzing the Barren County evidence as part of a common scheme or plan, requiring only a showing that the prior bad act and the charged offense are related as "part and parcel" of a greater plan, the trial court erroneously applied the modus operandi requirement that the prior bad act and the

charged offense be similar. Because the trial court's determination was not based on sound legal principles, it must be reversed and remanded.

Accordingly, the August 5, 2024, order is affirmed as it pertains to the exclusion of the Warren County video, and it is reversed and remanded for further proceedings consistent with this Opinion as it pertains to the Barren County evidence.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

J. Grant Burdette
Assistant Solicitor General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Adam Meyer
Assistant Public Advocate
Frankfort, Kentucky